PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant, v.
C. F. GREEN et al., Appellees.

No. 45847.

MARCH 17, 1942.

REHEARING DENIED JUNE 19, 1942.

Henry & Henry, for appellant.

John M. Rankin, Attorney General, and John E. Mulroney,
Assistant Attorney General, for appellees.

MILLER, J.—Plaintiff, in its petition, asserts that it issues
three types of level premium life insurance policies, known as
industrial, intermediate, and ordinary life policies; premiums on
industrial policies are paid weekly, those on intermediate policies
are paid monthly, and on ordinary life policies they are paid
annually, semiannually, or quarterly; all three types are par-
ticipating policies and contain provisions that dividends thereon
may be credited as paid-up additions to the amount of insur-

ance; defendant State Tax Commission, purporting to act under section 7022 of the Code, 1939, required plaintiff to pay an alleged premium tax on dividends credited in the form of paid-up additions during 1939 and 1940, which taxes were paid involuntarily and under protest in order to secure a renewal of the certificate for authority to carry on business in Iowa; said taxes were collected unlawfully, illegally, without authority, through mistake and an erroneous interpretation of said section 7022; the result was double taxation; the action was contrary to a departmental construction made by Honorable Ray Murphy as commissioner of insurance, in May 1937, and adhered to until 1941. The prayer was for a refund of the taxes paid under protest, for an injunction restraining defendants from requiring such payments in the future, for an order requiring the commissioner of insurance to renew plaintiff's certificate of authority to transact business in Iowa without the payment of such taxes, and for general equitable relief.

The answer is in two counts. Count 1 asserts a general denial. Count 2 asserts a departmental construction prior to that of Ray Murphy and to the opposite effect, and that the action of defendants in 1941 was taken pursuant to an opinion of the attorney general. The prayer was that the action be dismissed.

At the trial the facts were not seriously disputed. Many of them were stipulated. Others were shown by documentary evidence. Some oral testimony was taken. The evidence will be discussed later. The court was of the opinion that the provisions of section 7022 of the Code, 1939, requiring an insurance company such as plaintiff to "pay into the state treasury as taxes two and one-half percent of the gross amount of premiums received by it for business done in this state, * * * upon the lives of persons resident in this state during the preceding year," must be so construed that the term "gross amount of premiums received by it for business done" includes dividends applied to provide paid-up additions to the amount of insurance. The court stated: "When they receive money through the mechanics of a dividend declared and by the terms of the contract between the company and the assured that dividend is to be automatically applied for the benefit of the assured in added insurance, that is

a premium." Decree was entered accordingly, dismissing plaintiff's petition, from which plaintiff appeals to this court.

In the oral opinion, delivered by the court, it is indicated that the questions presented by industrial policies of plaintiff are not presented by the record. Such indication is contrary to the record. It was stipulated what the dividend provisions of industrial policies have been and that at present they are as follows:

"DIVIDEND PROVISION. Provided this Policy continues in force other than as extended insurance or reduced paid-up insurance, any portion of the divisible surplus accruing on this Policy shall be annually ascertained and apportioned to this Policy as a dividend by the Board of Directors. Such dividend or any part thereof, may be applied by the Company to increase the reserve under this Policy so as to extend the term during which the commencing weekly premium is payable for an additional term during which such premium, without increase, shall continue to be payable, but to the extent that such dividend is not so applied, it shall be in the form of a temporary or a permanent paid-up addition, or both, to the amount of insurance."

It was also stipulated that the tax of $13,392.98, paid under protest for 1939, was based upon apportionment of dividends amounting to $535,719.31 of which the sum of $469,111.49 was credited to industrial policies and $66,607.82 was credited to intermediate and ordinary life policies combined. The tax of $11,751.11, paid under protest for 1940, was based upon dividends amounting to $470,044.37, of which $402,344 was credited to industrial policies and $67,700.37 to intermediate and ordinary life policies. Accordingly, the bulk of the tax paid for each year was based upon dividends credited to industrial policies.

The dividend provisions of intermediate policies are now as follows:

"Annual Dividends. If this policy continues in force other than as extended insurance or reduced paid-up insurance and while no disability installments are payable, any portion of the divisible surplus accruing on this Policy shall be annually ascertained and apportioned by the Board of Directors and credited to this Policy as a dividend at the end of the policy year. Any

such dividend shall at the option of the Insured be (1) applied to provide a paid-up addition to the amount of insurance, or (2) paid in cash, or (3) applied to the reduction of any premium then due, or (4) left to accumulate to the credit of this Policy with compound interest. * * *''

The dividend provisions of ordinary life policies contain the same four options accorded holders of intermediate policies. But it will be noted that, as to industrial policies, the assured has no option whatever regarding the application of dividends; the option, if any, is exercised by the company, not by the insured. It thus appears that, as to industrial policies, the premium specified in the contract of insurance remains constant, but the amount of insurance afforded by the contract is increased as dividends are applied to provide paid-up additions. As to intermediate and ordinary life policies, several possibilities exist: if the insured exercises option 2, whereby the dividend is paid in cash, or option 4, whereby it is left as a credit with interest, neither the amount of the premium nor the amount of insurance is affected; if option 1 is exercised, the amount of insurance is increased; if option 3 is exercised, the amount of any premium due is reduced.

In undertaking to interpret section 7022 as applied to the record herein, it is well to have in mind the meaning of certain words and phrases that are used at times in the record. Life insurance, of course, is ordinarily a contract whereby, for a specified premium to be paid in various ways, the insurance company agrees to pay a stated sum to designated beneficiaries in the event of death of the insured while the contract is in force. The amount of the premium to be paid is determined mathematically from certain established and recognized tables of mortality. Probably the most accepted table is known as the American Experience Table of Mortality, which is set forth at pages 2106 and 2107 of the Code, 1939. From this table it is computed actuarily what premium one in good health, at a given age, should pay to provide a stated amount of insurance payable at his death. In determining the amount of the premium, consideration is given not only to the mortality table but also to the fact that the premium is paid in advance so that the probable earnings by way of interest must be deducted. Various interest rates are employed such as 4 per cent, 3½ per cent, 3 per cent, etc. As to the

policies involved herein, the full premium is not paid in advance but a level premium is paid in installments. The interest factor is still present, because in the early years of the policy life the premiums are higher than the mortality rate requires, so that interest must be considered as representing the earnings on the excess premium paid in advance.

In addition to the foregoing factors, certain contingencies are contemplated. Changing economic conditions are considered whereby earnings may be diminished and a premium based upon probable earnings of 4 per cent might become less reliable, one based upon a more conservative rate of 3 per cent less reassuring, and the actual earnings might be less than either rate. There is also the hazard of national calamity, such as pestilence or war, whereby abnormal death rates are produced, with corresponding abnormal losses because of death claims against the company. The management of the company is another factor. To guard against such factors the premiums are increased or "loaded" to provide a margin of safety.

In nonparticipating policies the premiums are rigid and unchangeable; the insured assumes them without any provision for modification or adjustment. The policies involved herein, however, are known as participating policies. In the event that the experience of the company is favorable from the standpoint of earnings on investments, mortality rates, etc., the excess payment contained in the premiums collected is not needed. This is in effect acknowledged by the determination of a divisible surplus which is apportioned to the credit of policyholders and is designated a dividend. The question here is whether, when a dividend is applied to provide paid-up additions to the amount of insurance, it comes within the contemplation of the term "gross amount of premiums received * * * for business done" appearing in section 7022 of the Code, 1939. We hold that it does not.

Both parties cite and rely upon language appearing in our opinion in New York L. Ins. Co. v. Burbank, 209 Iowa 199, 216 N. W. 742. This case in turn comments upon a prior decision of this court in the case of In re Continental Cas. Co., 189 Iowa 933, 179 N. W. 185.

In the Continental Casualty Company case, supra, the state sought to collect a premium tax under section 1333, Code Sup-

plement of 1913 (now section 7022 of the Code, 1939), on $20,-000 in premiums actually received by the company but afterward returned to the policyholders upon cancellation of their policies before expiration of the terms thereof. The trial court denied recovery. In affirming the judgment in this regard, we state (at pages 937 and 938 of 189 Iowa, page 186 of 179 N. W.), as follows:

"While it is true, in a literal sense, that the company did receive these premiums from the policyholders in advance of their earning, it is also true, in a legal sense, that it received the same subject to the right of the policyholders to demand the return, upon a cancellation of their policies at any time before the earning of the premium. Until such time, therefore, as the premium should be fully earned, the right of the insuring company thereto was a qualified one, and, speaking broadly, was impressed with a trust, created by the statute. Until the premium was earned by the insuring company, it was a quasi trustee for the policyholder, as to the unearned portion. The only fair construction of the statute, therefore, is that 'premiums received' can refer only to those premiums which the company has a right to retain, as its own absolute property. There is a quality of unreasonableness in the contrary contention which forbids its adoption, unless required by the clear direction of the statute. We have little hesitancy in sustaining the trial court at this point. The construction which we thus put upon our statute is in accord with the holding of other courts in the construction of similar statutes. German Alliance Ins. Co. v. VanCleave, 191 Ill. 410 (61 N. E. 94) ; People v. Miller, 177 N. Y. 515 (70 N. E. 10) ; State v. Continental Ins. Co., (Ind.) 116 N. E. 929; State v. Fleming, 70 Neb. 523 (97 N. W. 1063) ; State v. Wilson, 102 Kan. 752 (172 Pac. 41) ; Mutual Ben. Life Ins. Co. v. Commonwealth, 128 Ky. 174 (107 S. W. 802)."

The case also involved an appeal on the part of the American Alliance Insurance Company and the Great American Insurance Company from that part of the judgment which permitted the state to collect an additional premium tax in cases where a part of the business was reinsured in other companies. The company that originally wrote the insurance paid the full premium tax on

the entire premium. The state also collected an additional tax on that part of the premium received by the reinsuring company. This part of the judgment was reversed, this court stating (at pages 944 and 945 of 189 Iowa, page 189 of 179 N. W.), as follows:

"Strictly speaking, it was a contract of indemnity, rather than of reinsurance, although it operated, in practical effect, as reinsurance. * * * Under the stipulation of facts herein, the liability of the indemnifying company in the event of loss was to the insuring company, and not to the policyholder. The policyholder paid one premium. This premium paid for his insurance. The full premium tax upon it was paid. In the state of New York, this premium so received by the insuring company was apportioned pursuant to the pre-existing contract. A division of the premium worked a division of the loss, if any. Did this apportionment create 'insurance upon property within this state' in any other sense than that the original policy covered property within this state? Was there any new insurance created upon property in this state? We think not. Indeed, we think that the distribution of these premiums in the manner indicated by the stipulation of facts, was business done by these companies in the state of their domicile. We see no fair reason for saying that such business should be deemed to be constructively done in Iowa, or should be deemed to come within the letter or spirit of our statute."

In the case of New York Life Ins. Co. v. Burbank, supra, this court does not overrule the Continental Casualty Company case, but undertakes to distinguish it with the following comment (at pages 207 and 208 of 209 Iowa, page 745 of 216 N. W.), to wit:

"Plaintiff relies on In re Continental Cas. Co., 189 Iowa 933. The claims in that case were by a casualty company for a deduction for premiums returned on cancellation of fire insurance policies, and by the casualty company and fire insurance companies for deductions for premiums paid for reinsurance on identically the same risks granted pursuant to contract made and carried out in another state. * * * While the discussion in some particulars is inconsistent with our discussion here, the case is not authority

in support of plaintiff's present contention. Whether, in the light of the facts and legislative history now reviewed, we would now arrive at the same conclusion, need not be considered.''

In the case of New York Life Ins. Co. v. Burbank, supra, the insurance company sought a refund of premium taxes paid, contending that, where dividends are paid, the tax should be based upon the amount of premiums actually received and retained by the company rather than the amount stipulated in the policies. Relief was denied. On appeal the judgment was affirmed. At page 200 of 209 Iowa, page 742 of 216 N. W., the question is stated thus:

''As a preliminary statement in general terms of the question submitted, it may be said to be: Should the term 'gross amount of premiums received by it * * * for business done in this state,' in Section 1333, Code Supplement, 1913, requiring insurance companies of plaintiff's class to pay a tax of 2½ per cent thereon, be construed to mean the total amount of premiums computed at table or policy rates at their face, or should it be construed to mean that amount less such sums as the company has during the year abated from premiums or paid in cash to policyholders for dividends and surrender values?''

At page 203 of 209 Iowa, page 743 of 216 N. W., we state:

''The factors entering into the fixing of the premium are: First, mortality, computed according to experience; second, interest earnings, computed at a rate estimated from experience; third, 'loading,' to provide for operating expenses and unforeseen contingencies. The premium is fixed, not for the individual, but for a class, and the experience upon which it is based is the experience of a· series of years. There have been in the past, and it must be assumed that there will be in the future, fluctuations in each element entering into the premium basis. The duty of paying the premium in order to continue the insurance is necessarily that of the policyholder to the company, as an entity distinct from him, and is absolute. The premium is a resource of the company's. The right to the dividend depends on the discretion of the plaintiff's officers.''

At page 205 of 209 Iowa, page 744 of 216 N. W., we state:

"As has been shown, some of the premium finds its way into the permanent surplus of the company. The margin of earnings above the estimated amount and the saving in mortality rate and 'loading,' in the case of a stock company, are undeniably profit, and from it the dividends are paid to the stockholders, and in the case of participating policies, to the policyholders. In the case of the plaintiff, that same margin, acquired in the same manner and from the same sources, is divided between the permanent surplus belonging to the company and the policyholders. In both cases, it represents profit. In both cases, the contract obligation on the part of the policyholder (if he continues the insurance) is to pay the premium in full, and on the part of the company to pay or allow the dividend in full, in the event that one is assigned. If the dividend is used in reduction of premium, it is, in substance, the offsetting by the policyholder against the premium of his demand against the company."

Again, at page 207 of 209 Iowa, page 745 of 216 N. W., we state:

"The claim that the dividend is a refund of that part of the premium which the company has no right to retain as its own, and that not the contract premium, but the contract premium less dividends declared, is the gross premium, within the meaning of the statute, is, as to foreign companies, we think, on the facts before us, untenable. Much more so, is the contention that deferred dividends and surrender values paid are part of the premiums deductible in ascertaining the gross premiums received. Our conclusion is sustained by the following cases: Northwestern Mut. Life Ins. Co. v. Roberts, 177 Cal. 540 (171 Pac. 313); Cochrane v. National Life Ins. Co., 77 Colo. 243 (235 Pac. 569); New York Life Ins. Co. v. Wright, 31 Ga. App. 713 (122 S. E. 706); State ex rel. Northwestern M. L. Ins. Co. v. Tomlinson, 99 Ohio St. 233 (124 N. E. 220); State ex rel. Hdw. Mut. Cas. Co. v. Hyde, 304 Mo. 447 (264 S. W. 381); Massachusetts Bond. & Ins. Co. v. Chorn, 274 Mo. 15 (201 S. W. 1122); Fire Assn. v. Love, 101 Tex. 376 (108 S. W. 158)."

The interpretation to be given the foregoing language of this court is somewhat clarified when we examine the authorities relied upon and cited in support thereof. The case of Northwest-

ern Mut. Ins. Co. v. Roberts, 177 Cal. 540, 541, 171 P. 313, involved the interpretation of the California Constitution reading as follows:

"Every insurance company or association doing business in this state shall annually pay to the state a tax of one and one-half per cent upon the amount of the gross premiums received upon its business done in this state, less return premiums and reinsurance in companies or associations authorized to do business in this state." Article XIII, section 14(b).

The California court held that a dividend allocated to a participating policy of life insurance did not come within the statutory definition of return premiums. The case was apparently considered as an authority for distinguishing the question presented in the Continental Casualty Company case from that presented in the Burbank case.

In Cochrane v. National L. Ins. Co., 77 Colo. 243, 247, 235 P. 569, 570, the court construes the Colorado statute as follows, to wit:

"It appears to us quite clearly that the plain intent of the statute is that the company should be liable to pay the tax on the premium fixed in the policy, for that is the premium contracted for in the policy for each and every year until it matures. Were it not so intended certainly an exemption from liability on account of dividends would have been provided for in the statute."

In New York Life Ins. Co. v. Wright, 31 Ga. App. 713, 122 S. E. 706, the judgment was affirmed without opinion. However, in the syllabus, prepared by the court, appears the following statement, to wit:

"All 'premiums' and 'gross receipts' of insurance companies doing business in this state, which are subject to taxation under the General Tax Act of 1918 (Ga. Laws 1918, p. 43, sec. 6, on page 73), as amended by the act of 1919 (Ga. Laws 1919, p. 45, sec. 2, on page 54), include, as applied to life insurance companies, the actual maximum table rate of premium which the policy holder is under his contract of insurance, required to pay to the insurance company, and which obligation is discharged by the policy holder either by a payment in full to the company

or by a partial payment thereon, supplemented by a credit made thereon by the company of any so-called 'dividend' which has accrued to the policy holder."

In State ex rel. Northwestern M. L. Ins. Co. v. Tomlinson, 99 Ohio St. 233, 124 N. E. 220, the opinion is based upon the legislative history of the Ohio statute. The statute originally provided that dividends allowed and used in the payment of current premiums "shall be deducted from such gross receipts". 90 Ohio Laws 201, 202. Thereafter, the statute was changed to provide that the tax be paid upon "gross amount of premiums received * * * without * * * any deductions whatever." 95 Ohio Laws 290. Accordingly, the court states, 99 Ohio St., at 239, 124 N. E., at 222, as follows:

"There seems to be no room for argument that when the legislature, as it did in 90 Ohio Laws, 201, expressly provided for the deduction from 'the gross premium and assessment receipts' of 'dividends or surplus from previous payments' it understood, intended, and used the term 'the gross premium and assessment receipts' as meaning the gross premiums stipulated on the face of the policies. This being so we are obliged, in view of the history of these sections and the continued use of the term 'gross premiums' thereafter, and in view of the insertion of the provision 'without * * * any deductions whatever,' upon the repeal of the provision for deduction for 'dividends or surplus from previous payments,' to hold that the insurance commissioner is authorized to base each year the excise tax of insurance companies doing business in Ohio by virtue of the authority of another state upon the gross premiums stipulated to be paid on the face of the policies in force in Ohio during the preceding year."

The case of State ex rel. Hdw. Mut. Cas. Co. v. Hyde, 304 Mo. 447, 451, 264 S. W. 381, 382, involves premiums on casualty insurance. The court refers to a former decision regarding life insurance, stating as follows:

"Relator seeks to bring itself within the rule laid down by this court in State ex rel. National Life Ins. Co. v. Hyde, 292 Mo. 342 [241 S. W. 396]. It was there held that the tax could be collected only upon the amount of the contractual premiums

on Missouri business, 'less credits thereon due to the application of so-called dividends or previous overpayments.' "

The court does not overrule the decision regarding life insurance above cited but undertakes to distinguish it from the application of the statute regarding casualty insurance companies. It is a bit difficult to see how the opinion supports the conclusion of this court in the Burbank case.

The case of Massachusetts Bond. & Ins. Co. v. Chorn, 274 Mo. 15, 33, 201 S. W. 1122, 1127, does not involve dividends allocated to life insurance policies. This is obvious from the holding of the court at the close of the opinion, to wit:

"We therefore hold that the tax in question is assessable upon the gross amount of appellant's premiums received in this State, or on account of its business done in this State, without deduction of premiums returned on account of cancellation of policies or amounts paid for reinsurance of its risks."

The case of Fire Assn. v. Love, 101 Tex. 376, 108 S. W. 158, is also a case involving the right to deduct return premiums on canceled policies and the amount paid for reinsurance on fire policies, and would hardly seem to present the question involved in the Burbank case.

By reason of the foregoing, it is clear that in the Burbank case, this court, in holding that the premium tax is to be based upon the contract premium without deduction for dividends paid, meant by the term ":contract premium" the amount fixed in the policy as the premium to be paid. The court refused to apply the theory of the Continental Casualty Company case and to hold that the premiums were unearned to the amount of the dividends. But the Continental Casualty Company case was not overruled. It was merely distinguished.

The plaintiff herein is willing to pay the full tax upon the contract premiums fixed in the policies as required by the Burbank case. The question is: Must it go a step further and add to the tax thus computed an additional tax based upon dividends applied to provide paid-up additions? When we undertake to answer this question as applied to the industrial policies, the philosophy of the Continental Casualty Company case says that the answer should be "No." As to such policies the contract

premium paid by the policyholder is constant. If, as a result of favorable experience as to income on investments, mortality rates, management, etc., the premium is more than the cost of the insurance, the full premium is earned by increasing the amount of insurance to that which the premium should buy. Can we then say logically that the contract premium has been increased? The reasoning of the Continental Casualty Company case says "No." The rule announced in the Burbank case does not require a different answer. The tax is still paid on the full contract premium as there required.

When we come to the intermediate and ordinary life policies, the situation is different because the insured has an option. But does this require a different answer? The insured still pays the same contract premium and that premium is still earned in the same manner. There would be an element of unreasonableness in the application of a different rule. Under the rule of the Burbank case, the tax is the same even though the premium actually paid is reduced by the exercise of option 3. This is because the statute is construed to mean that the tax is based upon the contract premium and does not authorize a reduction therefrom where the premium actually paid is reduced by application of a dividend. Would it be fair or reasonable to say that the statute contemplates that the tax be increased by adding to the contract premium the amount of such dividend when applied to provide paid-up additions to the amount of insurance? If the statute does not contemplate any reduction from the contract premium because of the payment of dividends, to be consistent we must also hold that it does not contemplate any addition thereto because of the application of dividends.

Stated otherwise, in the Burbank case, supra, we stated that the question to be decided was whether the statute is to be construed as requiring a tax on "the total amount of premiums computed at table or policy rates at their face," or "*that amount* less such sums as the company has during the year abated from premiums or paid in cash to policyholders for dividends." (Italics supplied.) We held that the tax must be computed on the total amount of premiums computed at policy rates, the contract premiums, and that dividends would not be considered for the purpose of reducing the tax. We now hold, in line with that

decision, that dividends will not be considered for the purpose of increasing the tax. In both instances it is the policy rate, the contract premium, that determines the amount of the tax. In both cases the dividends do not affect the amount of the tax.

Both sides devote considerable attention to their respective contentions as to alleged departmental constructions of the statute. Plaintiff produced Honorable Ray Murphy as one of its witnesses. He testified concerning a decision made by him in May 1937, to the effect that plaintiff should not be compelled to pay a tax on the items here in dispute. He did not ask an opinion from the attorney general because of his experience as a lawyer and former chairman of the tax commission. He testified:

"I was definitely of the opinion that it was a simple question and I felt perfectly competent to solve it myself and I am of the same opinion still as I was at the time I made the ruling."

The State contends that the department had previously held otherwise and that premium taxes were repeatedly paid on dividends applied to provide paid-up additions to the amount of insurance. The evidence is not clear what the situation was. Apparently, some companies paid and some did not. John Speidel, deputy insurance commissioner under Ray Murphy, testified:

"I don't recall the names of the companies that didn't pay the premium tax on this item. The only thing I remember is that it was a far larger item with reference to the Prudential than any other company. Only a comparatively few number of companies it affected at all."

The trial court observed:

"It is my understanding that departmental construction will never rise to the dignity of a decision by a court of competent jurisdiction considering the statute. It is to be taken as persuasive, a matter for argument, for thought. When a case comes before a court requiring the construction of a law which has had a departmental construction over a long period of years, courts are loathe to upset that, but it can never rise to the point

where it has the binding force on the court that a decision of the appellate tribunal of this state has.''

In the Continental Casualty Company case, supra, we state, at pages 940 and 941 of 189 Iowa, page 187 of 179 N. W., as follows:

''Moreover, if there had been a legislative construction, it would adjudicate nothing. The only effective thing which such legislature could do would be to enact new legislation, or to repeal or amend the old. It could not change existing law by mere construction. We have little occasion, therefore, to deal with the mere implication of legislative construction which is contended for by appellant. The amendment enacted by the thirty-second general assembly speaks for itself. It is effective according to its terms, and within the scope thereof. It is not effective beyond its terms.''

In the case of State ex rel. Pew v. Independent Order of Foresters, 226 Iowa 1339, 1345, 286 N. W. 425, 428, we review other decisions on the rule of departmental construction and state as follows:

''The construction of the statutes, upon which the State relies as imposing a gross premium tax upon appellee, is not free from doubt. Likewise, the statutes, upon which appellee relies as exempting it from the payment of such tax, are not as clearly applicable to the situation as they might well be. Each party presents persuasive arguments in support of its position. The question is a debatable one. The intention of the legislature is not clearly expressed. Its acquiescence in the departmental construction must be considered as strong evidence of its intent.''

The evidence of acquiescence by the legislature in departmental construction on the issue presented herein is not strong. Its pursuasive effect is thereby diminished. It is not controlling in any event.

We reach the conclusion, and hold, that plaintiff should have been granted the relief sought herein. The court erred in dismissing the action. The decree herein is reversed and the

cause remanded for the entry of a decree in harmony with this opinion.—Reversed and remanded.

Bliss, C. J., and Hale, Sager, Wennerstrum, Stiger, and Garfield, JJ., concur.

Mitchell, J., concurs specially.

Oliver, J., concurs in result.

Mitchell, J. (specially concurring)—It seems to me that if the appellee's contention is correct, then the State is collecting double taxation. The trouble arises from the use of the word "dividend." No doubt some master salesman of some insurance company must have conceived of the use of the word "dividend" as a sales proposition. Clearly, the insurance company is not paying its policyholder a dividend. It is refunding to the policyholder a small part of an overpayment of the premium which the company charged; that is all the so-called dividend is.

Insurance companies, for reasons unknown to the writer, have been permitted over the years to charge excessive premiums by using old mortality tables and by including excessive loading charges. The insurance company, to a certain extent, satisfies the policyholder by returning part of that premium. It may either pay it back in cash; it may apply it on the premium for the coming year; or it may be used in purchasing additional insurance.

Some argument is made that the alleged dividend is paid not only from the excessive premium charged but also from earnings other than the premium account. One need only look through the reports of the life insurance companies in America and he can come to no other conclusion than that all the poor policyholder gets back is a part of the excessive premium which he pays.

The refund, a so-called dividend, is nothing more nor less than a refund of part of the excessive premium charged. The state of Iowa receives a tax upon that premium. To permit it to levy an additional tax, as it now seeks to do, would be permitting double taxation. All of this tax comes out of the pocket, not of the insurance company, but of the policyholder, who is already charged an excessive premium by the insurance company.