MUTUAL BENEFIT LIFE INSURANCE COMPANY, Appellee, v.
CHARLES R. FISCHER, Commissioner of Insurance,
et al., Appellants.

No. 46633.

MARCH 6, 1945.

John M. Rankin, Attorney General, and R. O. Garber, of Des Moines, for appellants.

Henry & Henry, of Des Moines, for appellee.

MANTZ, J.—The plaintiff, Mutual Benefit Life Insurance Company, brought suit against defendants Charles R. Fischer, Commissioner of Insurance of the State of Iowa, John M. Grimes, .Treasurer of the State of Iowa, and C. Fred Porter, Comptroller of the State of Iowa, to compel a refund to it of the sum of $378.10 as insurance-premium taxes paid by plaintiff to defendants under protest on July 14, 1943, and to compel such commissioner to issue to plaintiff a license to carry on its business of writing life insurance in Iowa, and to enjoin such commissioner from in any manner interfering with the operation of said company. Following trial the court entered a finding and decree in favor of plaintiff and defendants have appealed.

There is little dispute in the facts. The record before us consists of the pleadings, various exhibits, the undisputed testimony of Edward E. Rhodes, vice president of the insurance company, the finding of facts and conclusions of law by the court, and its decree.

I. Appellants, following their statement of the case, say:

"The sole question involved in defendants' appeal and discussed in this argument is: Does Section 7022 of the Code of Iowa 1939 as amended apply to. dividends applied upon the 'Accelerative Endowment' plan under policies issued on the lives of residents of the State of Iowa by the plaintiff?"

The appellee sets forth the issues in a somewhat different form but we think that the issue as set forth by appellants is, in essence, as stated.

Appellee, in the year 1943, under protest, paid a tax computed upon certain dividends belonging to policyholders and

under their directions retained by appellee and applied in what was known as the "accelerative endowment" plan. Appellee claims that such funds, being dividends returned to it by the policyholders, are not taxable under Code section 7022, while appellants claim that such sums so applied are to be included in the term "gross premiums" as set forth in said section. Said section 7022, in substance, provides that all foreign insurance companies authorized to do business in Iowa shall make annual statements to the Commissioner of Insurance and at the time thereof "pay into the state treasury as taxes two and one-half percent of the gross amount of premiums received by it for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year."

Boiled down, it seems to us that the real issue goes to the right of appellants to impose and collect the two and one-half per cent premium tax upon certain dividends declared and used by the policyholders to purchase accelerated endowment insurance.

II.  Appellee is a foreign insurance company and is authorized to carry on its business in Iowa. It operates upon the mutual plan, wherein each policyholder is a member. In it all profits and surplus belong to the policyholders. All policies issued are what are known as "participating," thereby giving each member a right to share in any profits or surplus returned in the form of dividends. It issues no other type of policy. By the terms of each policy, after the first year, and annually thereafter, the policyholder is entitled to participate in any dividend declared. All policies issued so provide. With this is coupled the proviso as to how such dividends are to be disposed of. To do so the member can exercise an option. Such method was pursued as to the policies involved in this case.

Insurance companies issue various types of policies. An ordinary life policy is payable only at the death of the member. The premium is a fixed annual charge and does not change. An endowment policy is payable at a fixed future date, either at some specified age or at some fixed period after issue. When dividends are declared they become the property of the insured member and he has an option to dispose of them as he sees fit.

He may take them in cash, use them to reduce premium, or he can purchase additional insurance, or leave them with the company to accelerate the date of the maturity of the policy. In the present case the last-named plan was followed. The premium and the amount of the policy to be paid at maturity did not change; simply the maturity date was advanced—accelerated.

"Dividend" is a common expression in life insurance. Dividends generally are derived by reason of favorable mortality among the members, from interest earnings in excess of the interest assumed in the computation of the premium, and from lower expense of management and operation than that computed in the fixing of the premium rate. This last item is sometimes spoken of as excessive "expense loadings."

The premiums charged insurance members are based upon three assumptions: (1) That the rate of mortality—that is, the death rate—will not exceed that set forth in a given table of mortality (2) that the interest earnings will not fall below a certain rate and (3) that the expenses and contingencies will not exceed those contemplated in making the rate. As a rule the premiums charged are somewhat in excess of the amount thought necessary to carry the insurance. Such excess is taken into consideration in fixing the dividend.

In the present case, as above stated, at the direction of the member the dividend was left with the appellee to be used in securing an accelerated endowment. This accelerated endowment did not change the premium or the amount to be paid; it simply hastened the time of the payment of the face of the policy. By using the dividend in such manner the insured had an opportunity to be paid the face of the policy during his lifetime. This he could not do under the ordinary life policy.

During the trial a specimen policy was used as an exhibit. It was an ordinary life policy issued by appellee to a member on September 15, 1905, said member then being aged twenty-one years. The level annual premium was $18.40 and when the second annual premium fell due there was a dividend to the credit of the insured of $1.96. Each year thereafter an annual dividend was declared. He used the dividend of $1.96 and added to it $16.44 to pay the premium due the second year. Later, by using

the dividends to apply on the accelerated endowment plan, the policy matured and was paid in full—$1,000—in 1943.

During the entire period from 1905 to 1943, the annual premium was paid by the assured and the insurer paid to the state of Iowa the regular tax of two and one-half per cent thereon.

It stands uncontradicted that the appellee at all times has paid the two and one-half per cent tax on all annual premiums. Appellee concedes that the state has a legal right to have paid it such tax undiminished by any credit of dividends withheld or applied. Appellee does contend, however, that in computing the "gross premium" received appellants are not entitled to have added to the regular annual premium the dividend declared. For example, they cite the policy introduced as an exhibit, wherein the annual premium was $18.40, and say that if appellants' contention is sustained the state could collect the two and one-half per cent tax on $20.36—the $18.40 annual premium and the $1.96 dividend.

The trial court held that section 7022 of the Code of 1939 did not provide for any tax upon dividends applied upon the accelerative endowment plan and that such statute should be construed to apply only to contract premiums as specified in the various policy insurance contracts issued by the insurer and held by residents of the state of Iowa.

III. Singularly, both parties place reliance upon two of our holdings: New York L. Ins. Co. v. Burbank, 209 Iowa 199, 216 N. W. 742; and Prudential Ins. Co. v. Green, 231 Iowa 1371, 2 N. W. 2d 765, 141 A. L. R. 1401. Appellants also cite In re Continental Cas. Co., 189 Iowa 933, 179 N. W. 185; Metropolitan L. Ins. Co. v. Rouillard, 92 N. H. 16, 24 A. 2d 264.

We have gone over the above-cited cases carefully in connection with the arguments which the parties have made. We are impressed by the manner in which the legal arguments have been presented. It reveals careful and painstaking study and consideration. We hold that the trial court did not err in the decree rendered. Following a careful consideration of the record and issues involved, we are of the opinion that the holding of this court in Prudential Ins. Co. v. Green, supra, is controlling in this case. In essence, the issues in that and the present case are similar. In that case Miller, J., went into the mat-

ters involved thoroughly and made a very extensive and complete exposition of the legal principles controlling therein. Six of the members of this court concurred in the opinion rendered. The opinion, in effect, held that dividends declared by an insurance company were not subject to tax under section 7022.

In that opinion careful consideration was given to the holding of this court in New York L. Ins. Co. v. Burbank, supra, and the holding in that case was distinguished from the opinion being rendered. The Burbank case was carefully and fully analyzed and the court held that its holding in that case was not in conflict with its holding in the Green case. We do not think it necessary to again cover the field which was so fully and ably set forth in the Green case. We think that the logic and reasoning and rules of statutory construction therein set forth are as controlling in the present case as in that case. Appellants argue at length that the holdings in the Burbank and Green cases are conflicting and inconsistent and that one or the other should be overruled. With this contention we are unable to agree. In the Burbank case the New York Life Insurance Company brought suit against the treasurer of the state of Iowa to compel a refund of the two and one-half per cent premium tax paid under protest by the insurance company on various items, to wit, (1) annual dividends paid in cash, $10,354.21 (2) dividends used by way of deduction from the stipulated premiums, $104,628.59 (3) deferred dividends paid in cash, $216,-221.48 (4) amounts paid to policyholders in cash on surrender of policies, $245,894.68: a sum total of $577,098.96. The contract rates on policies for such period amounted to $1,611,198.64. Taking these figures into consideration it will be seen that the insurance company was asking that the amount derived from the annual premium rate be reduced by over thirty-five per cent. There the insurance company was contending that the regular contract premium be reduced by the allowance of certain specified credits. We think the court very properly denied this claim when it held that such reduction was not allowable.

In the present case the position of the parties is reversed from that which existed in the Burbank case. There, in essence, the insurance company was contending that the annual contract

premium for taxable purposes be reduced by certain applications, such as dividends, retained premiums, etc., while in the present case the state, through its Commissioner of Insurance and other officials, makes the claim that the annual contract premium for taxable purposes be increased by adding thereto dividends applied to the accelerative endowment plan. Would it be logical or reasonable to say that the annual contract rate was the taxable basis in the Burbank case and then say in the present case that the annual contract rate plus dividends was to be the taxable basis? It strikes us that to so hold would not only be unfair but unreasonable and inconsistent.

In the Prudential-Green case, supra, 231 Iowa 1371, 1383, 2 N. W. 2d 765, 771, 141 A. L. R. 1401, the court, in distinguishing its holding from the Burbank case, used the following language:

"When we come to the intermediate and ordinary life policies, the situation is different because the insured has an option. But does this require a different answer? The insured still pays the same contract premium and that premium is still earned in the same manner. There would be an element of unreasonableness in the application of a different rule. Under the rule of the Burbank case, the tax is the same even though the premium actually paid is reduced by the exercise of option 3. This is because the statute is construed to mean that the tax is based upon the contract premium and does not authorize a reduction therefrom where the premium actually paid is reduced by application of a dividend. Would it be fair or reasonable to say that the statute contemplates that the tax be increased by adding to the contract premium the amount of such dividend when applied to provide paid-up additions to the amount of insurance? *If the statute does not contemplate any reduction from the contract premium because of the payment of dividends, to be consistent we must also hold that it does not contemplate any addition thereto because of the application of dividends.* [Italics supplied.]

"Stated otherwise, in the Burbank case, supra, we stated that the question to be decided was whether the statute is to be construed as requiring a tax on 'the total amount of premiums

computed at table or policy rates at their face,' or '*that amount* less such sums as the company has during the year abated from premiums or paid in cash to policyholders for dividends.' (Italics supplied.) We held that the tax must be computed on the total amount of premiums computed at policy rates, the contract premiums, and that dividends would not be considered for the purpose of reducing the tax. We now hold, in line with that decision, that dividends will not be considered for the purpose of increasing the tax. In both instances it is the policy rate, the contract premium, that determines the amount of the tax. In both cases the dividends do not affect the amount of the tax.''

It seems to us that the language above quoted from the Green case is clearly decisive in this case. While there may be some language in the Burbank case which may seem at variance with the holding in the Green case, yet, by careful study, we are of the opinion that on the broad general principle of statutory construction, as applied to the record, the two do not conflict and can be clearly distinguished from each other. We are content to follow our holding in the Green case.

We have examined the two other cases cited by appellants. In re Continental Casualty Co., supra, so far as applicable, we think is not inconsistent with our holding herein. However, in that case the controversy was over taxing unearned premiums where policies were canceled or surrendered. Such policies, under the statute, have a surrender value, and the court very properly held, we think, that there could be no tax imposed upon an unearned premium returned following such cancellation or surrender. That case did not involve life-insurance policies such as are involved in the present case. We think that there is language in that case which supports our holding here.

In the case of Metropolitan L. Ins. Co. v. Rouillard, supra, there was a special statute of the state of New Hampshire which expressly defined ''gross premiums'' and provided that same could not be reduced by the deduction of dividends. In effect, the Burbank case arrived at the same conclusion.

IV. In support of the finding of the trial court appellee has set forth and argued two propositions: (1) That the inclusion of dividends in the ''gross premium received,'' as set forth

in section 7022, applied to accelerated endowments would amount to double taxation, and (2) that taxing statutes are to be construed strictly and any uncertainty or ambiguity should be resolved in favor of the taxpayer. In view of the fact that we are affirming the case on the first ground argued, we will refrain from passing upon the second, but we make the suggestion that were these two points the only ones raised they would merit serious consideration.

The finding and decree of the trial court was right and is affirmed.—Affirmed.

HALE, C. J., and WENNERSTRUM, SMITH, and MILLER, JJ., concur.

MULRONEY, J. (dissenting)—The majority sees no conflict between our decision in New York L. Ins. Co. v. Burbank, 209 Iowa 199, 216 N. W. 742, hereinafter called the Burbank case, and Prudential Ins. Co. v. Green, 231 Iowa 1371, 2 N. W. 2d 765, 141 A. L. R. 1401, hereinafter called the Green case. The majority feels its opinion is in line with the two opinions cited. I fail to follow the reasoning and I do not agree with the conclusion.

The point decided in the Burbank case was that a dividend was not a refund of an unused portion of the premium but a profit, and, when used by the insured to pay for insurance, it was a premium within the act taxing gross amount of premiums received. The same issue was involved in the Green case and a contrary result reached but the Burbank case was not overruled. The same issue is involved in this case and the Green case is followed. It seems to me that a decent regard for the decisions of this court as precedents demands that they either be followed by this tribunal or expressly overruled. In no other way can certainty, stability, and uniformity be preserved in the field of jurisprudence.

My position can be best illustrated by discussing the specimen policy which was in evidence in this case, with its options as to the application of the dividends. The thousand-dollar policy issued to the insured in 1905 when he was twenty-one years old provided for a level premium of $18.40. Upon the payment

of the second year's premium the insured .had certain options which he could exercise with respect to the dividends. He could have the dividend paid to him in cash or he could apply the dividends as a part payment of the $18.40 premium. This is what the insured did for the second year with the dividend of $1.96. He merely sent his check for $16.44 with instructions that his dividend was to cover the balance. Of course, this, under the Burbank case, resulted in a tax on $18.40 as the "gross premium received" by the company.

Another option given the insured was called the "Dividend Additions" plan. Here the insured could leave the dividends he was entitled to with the company and these "* * * Dividends are applied at Net Single Premium rates to the purchase of Additional Participating Insurance (herein referred to as Dividend Additions) payable with the Policy."

If the insured had exercised this option his insurance would have been increased from $1,000 to $1,000 plus paid-up additions purchased by his dividends. The insured in the specimen policy did not exercise this option, but it was the one exercised in the Green case. There this court held that the dividends so applied to purchase paid-up additions to the policy were not a part of the gross amount of premiums received. The conclusion was arrived at without overruling the Burbank case, but, as stated in the opinion, "* * * in line with that decision."

The third option in the policy gave the insured the right to apply his dividends under the "Accelerative Endowment Plan." Since this is the plan the insured chose, beginning with the third year, or 1907, I will quote the testimony of the vice president of the company as to the working of this plan under the specimen policy:

"When the third year's premium fell due in 1907, the insured requested that the dividend then due and until otherwise ordered, all subsequent dividends be applied upon the Accelerative Endowment Plan. The dividend of 1907 amounted to $2.10. That was sufficient to enable the Company to agree to pay the policy in full as an endowment when the insured obtained age 84, provided the policy was then in force. It also gave the insured at the time, the option of having the policy converted

into a fully paid-up. participating policy, payable at death when the insured attained age 80.

"When the fourth premium became due in 1908, the Company was enabled to agree to pay the policy as an endowment at age 82 instead of age 84 and also to reduce the age at which the insured might obtain paid-up policy from age 80 to 77. As subsequent premiums were paid in full and the dividends applied upon the Accelerative Endowment Plan, the maturity age of the policy and also the age at which the policy might be converted into a paid-up policy, was gradually reduced so that upon the payment of the premium due in 1931, the insured had the option of taking a paid-up policy upon the anniversary in 1932. The maturity date of the policy was fixed at 1946."

The majority opinion holds that when dividends are applied in furtherance of the "Accelerative Endowment Plan" they are not part of "gross amount of premiums received" within the provisions of the taxing statutes. This result, too, is arrived at without overruling the Burbank case, and the language from the Green opinion that the conclusion there reached is in line with the New York Life Insurance Company case is quoted with approval.

I. The word "premium," as used in the law and business of insurance, is the consideration paid for a contract of insurance. Northwestern Mut. L. Ins. Co. v. Murphy, 223 Iowa 333, 271 N. W. 899, 109 A. L. R. 1054; Equitable L. Assur. Soc. v. Johnson, 53 Cal. App. 2d 49, 127 P. 2d 95.

Dividends, as the vice president of the company testified:

"* * * come, primarily, out of the premiums paid or out of current earnings. The contract premium is first determined on the American Experience Table of Mortality. The next item would be interest earnings and the third is that the provision made in the premium for expenses and contingencies is not all required and that is what we call 'loading' in insurance terms * * * When a dividend is declared by the Board of Directors, then the dividend becomes the property of the policyholder * * * The policyholder has the right to say to the Company what he will do with the dividend * * *."

If 'the dividend is the cash credit that is owned by the insured and it is used for the payment of the insurance contract under any of the three plans enumerated, then it seems clear to me that it is part of the gross amount of premiums received under the definition that a premium is the consideration for the insurance contract. The policy which the insured received here could not have been purchased for $18.40 a year. Note again the clear testimony of the vice president of the company. After stating that the dividend was the property of the insured to do with as he saw fit, he testified:

"* * * by the exercising of the option to take under the Accelerative Endowment Plan he is using his own money. That is the dividend which was his money to purchase this type of policy which would have required a greater rate of contract premium had he taken it in the first instance and he is paying the Company an additional premium to take advantage of the different type of policy which he elects to take under his option."

Could anything be clearer? The vice president of the company calls the dividend "his [insured's] money." He speaks of exercising the option as "using his [insured's] own money." He actually describes such use as "paying the company an additional premium" for a different type of policy, and yet the majority rejects this testimony and holds it is not a premium at all.

It seems to me that consistency would require the tax base to include dividends when applied under any one of the three options. If this dividend is money in the hands of the insured, and it is transferred to the company by any one of the options, (1) to pay in part the contract premium (2) to purchase a paid-up addition to the policy (3) to (in the words of the insurance company's vice president) purchase a different type of policy requiring an additional premium, then clearly the dividend is being used to purchase insurance in each case. The insured is certainly not making a gift of this dividend money to the insurance company. He is getting an insurance contract which he could get only by assigning the dividend to the company or sending the company cash in the amount of the dividend.

The majority finds no inconsistency in holding that the

company received a premium when it received the dividends under option 1, but that it did not receive a premium when it received the dividends under options 2 and 3.

The majority opinion poses the question: "Would it be logical or reasonable to say that the annual contract rate was the taxable basis in the Burbank case and then say in the present case that the annual contract rate plus dividends was to be the taxable basis?" It protests loudly that to so hold would be "unfair," "unreasonable," and "inconsistent." Then it answers the question in this italicized language from the Burbank case:

*"If the statute does not contemplate any reduction from the contract premium because of the payment of dividends, to be consistent we must also hold that it does not contemplate any addition thereto because of the application of dividends."*

To me this is mere indulgence in rhetoric in disregard of logic. Where is there any logic or consistency in such a statement or holding? This is saying to the insurance companies: "If you take the dividend as a part premium payment (option 1) on the originally issued policy for $1,000 it is a premium, but if you take it as the purchase price for a paid-up addition to the $1,000 policy (option 2) it is not premium, and if you take it to accelerate the ordinary life policy of $1,000 into a more expensive endowment policy (option 3) it is not premium." In all three cases the premium was captured by the company as consideration, in whole or in part, for insurance—insurance that would not have been issued unless the insured either transferred his dividend to the company or paid its equivalent in cash. Why speak of "reducing" and "increasing" the tax? The tax is upon the "gross amount of premiums received." The only test is whether the dividend is being used to pay for insurance. The vice president of the defendant company said it was. The tax base here is increased over the level premium of $18.40 because the company received more than $18.40 premium for the policy it issued. To read the majority opinion one would think the statute taxed only the level contract premium instead of the gross amount of premiums. But if it be thought that the contract

premium is to control, then what is the contract premium? If the insured in the specimen policy takes his dividend in cash the contract is $18.40. If he exercises option 1, applying the dividend on the $18.40 premium, he has agreed to pay the contract premium of $18.40. If he exercises option 2 or 3 he contracts to pay $18.40 plus his dividends for the policy contract he receives. Let the insurance company, charged with the duty of paying the tax on the gross amount of premiums received, pay on the contract premiums if you will, but let it be on the entire contract of which the exercised options are a part.

Does the majority feel that the insured gave this dividend, which he could receive in cash, to the company as a gift? Does the majority feel the company gave nothing in return for the dividend received over and above the $18.40 premium, under options 2 and 3? This must be their thought if the tax is to be based on $18.40. And yet, if the company sold a policy, endowment at age fifty-nine—which is what the specimen policy with the exercised option amounted to—the annual premium would, according to the testimony of the vice president, be more than $18.40 annually.

The insurance company admits it received more than $18.40 annually for this contract of insurance; that it would not issue this insurance contract for $18.40 annually. Still the majority feel the insurance company should be taxed only on the basis of $18.40. A logical statement would be one to the effect that the dividend is taxable as a premium when used to pay for any insurance contract.

Despite the fact that most persons would instantly say that in the Burbank case we held dividends taxable because they were used to pay for insurance—on no other theory can the decision be sustained—the majority, by adherence to and approval of the Green decision, continues to thrust upon the commissioner, or tax collector, the responsibility of determining which case we will follow. For there will be other cases. The insurance companies display great ingenuity in drafting many option plans designed to secure the dividends from the insured in giving him a more favorable insurance contract than he would otherwise receive. This is more than I can reconcile with my view of the functions

54

of this court. Either the Burbank case or the Green case should be overruled. I would favor overruling the Green case, and therefore, I would reverse.

OLIVER and BLISS, JJ., join in this dissent.