No. 16,656.

PRUDENTIAL INSURANCE COMPANY OF AMERICA
*v.* KAVANAUGH,
COMMISSIONER OF INSURANCE.
(240 P. [2d] 508)

Decided January 21, 1952. Rehearing denied February 11, 1952.

Messrs. PERSHING, BOSWORTH, DICK & DAWSON, Mr. ROBERT G. BOSWORTH, Mr. SAMUEL S. SHERMAN, JR., Mr. HOVER T. LENTZ, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. WILBUR M. PRYOR, JR., Assistant, Mr. BENJAMIN F. STAPLETON, JR., Special Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

THIS is a class suit brought by the Prudential Insurance Company of America, which we herein designate as "the Company," on behalf of itself and all others similarly situated, against Luke J. Kavanaugh, as Commissioner of Insurance of the State of Colorado, hereinafter called "the Commissioner."

The suit involves the interpretation of section 14, chapter 87, '35 C.S.A., as amended, S.L. '41, p. 515, the pertinent portion of which reads as follows: "All insurance companies doing business in this state shall pay to the state treasurer, through the commissioner's office a tax of two per cent (2%) on the gross amount of all premiums collected or contracted for on policies or contract of insurance covering property or risks within this State during the year ending December 31st next preceding, after deducting from the gross amount of such premiums the amounts received as reinsurance premiums on business in the State, and in the case of companies, other than life, the amounts paid to policyholders as return premiums; * * * "

The company sought a declaratory judgment to the effect that the two per cent tax applied to the premium named in the face of each policy and not to any subsequent divisible surplus made applicable to the policyholder in the form of a dividend when such dividend was used to purchase paid-up additional insurance. Having suffered adverse judgment in the trial court, the company now here seeks reversal of the judgment.

The parties stipulate as to the following facts: That the company issues three general types of contracted level or fixed premium life insurance policies, on which it is the dividends or divisible surplus that are involved in this action. In the case of the so-called "industrial

policy," there is a provision that the portion, if any, of the divisible surplus of the company accruing upon this policy shall be determined annually by the board of directors and will be credited to this policy as a dividend. Such dividend shall be paid in the form of a paid-up addition to the amount of the insurance. Any paid-up dividend additions existing at the maturity of this policy will be included in the proceeds payable. In the case of the two other types of policies, namely the "monthly intermediate policy" and the "ordinary life policy," there is a provision that "upon proper written request to the home office any such dividend may be: 1. paid in cash, or 2. applied to the reduction of any premium then due, or 3. applied at net single premium life insurance rates to provide a paid-up addition to the face amount of insurance, or, 4. left to accumulate to the credit of this policy with compound interest at the rate authorized by the board of directors but not less than two per cent per annum."

The trial court held that a decision favorable to the insurance company's contention would overrule in part our decision in *Cochrane v. National Life Ins. Co.,* 77 Colo. 243, 235 Pac. 569, and concluded with these words, "We are therefore of the opinion that the dividends should be considered as premiums collected or contracted for during the year, and that the company is liable for the tax thereon." This court does not agree with the foregoing interpretation by the trial court.

██ ██ We are of the opinion that the two per cent tax should be applied solely on the premium contracted for in the policy, no matter which alternative the policyholder may elect in applying his share of the divisible surplus of the company. The company has in effect given the policyholder, in consideration of the premium named in the policy, four choices in the application of his share of the divisible surplus. On theory there would seem to be no reason for not applying the same rate of taxation whichever one of the four choices is elected.

We held in *Cochrane v. National Life Insurance Co.,* *supra,* that the premium to be taxed was that contracted for in the policy, and not the net premium due where the policyholder had applied his share of the divisible surplus as a credit toward the payment of his ensuing year's premium. There the policyholder had elected to *reduce the cost* of his insurance coverage, while his coverage remained unchanged. The instant case is the situation where the policyholder elects to have his *cost remain constant.* His gross premium and net premium become the same because he allows his share of the divisible surplus to apply on paid-up additional insurance to which, under the terms of his policy, he is entitled.

In this respect a mutual life insurance company is on the order of a cooperative store. At the end of the year its directors declare a dividend out of the divisible surplus which each member may draw in cash or apply in the purchase of additional merchandise. In *Cochrane v. National Life Ins. Co., supra,* the policyholder applied his share of the surplus to reduce the cost of his already existing commitments. In the instant case the policyholder has applied his share to purchase more merchandise (i. e. insurance) under the terms of his contract with the cooperative.

But it is argued that, when the policyholder applies his share of the divisible surplus toward the payment of paid-up additional insurance, this credit, which he so applies, becomes in effect a new premium which also should be subject to the two per cent tax. In making this argument, counsel lose sight of the fact that the policyholder's share of the surplus already has been taxed by virtue of our holding in *Cochrane v. National Life Ins. Co., supra,* where we declared that the amount taxable was the gross premium provided under the terms of the policy and not the net premium after deducting the policyholder's share of the divisible surplus. It comes down to a case of bookkeeping. If the amount

used to purchase additional paid-up insurance is treated as a new premium and subject to taxation, then credit for that same amount must be given, on the other side of the ledger, to the policyholder on the premium due as contracted for in the policy; for this is what the company has said is the overplus found not to be necessary in buying the protection provided on the face of the policy. Stated another way, the policyholder in the instant case has paid out not one dollar more than the annual premium provided in the policy. It is only this amount that has been contracted for. It is this amount only that the company has collected from the policyholder. It is the payment of this same amount that has entitled the policyholder to the additional coverage, but only by virtue of the terms of the policy and not through a new contract providing for additional premiums. Let us take as an example a case where the annual premium contracted for is one hundred dollars and at the end of the year the policyholder is entitled to ten dollars of divisible surplus, which he may choose to apply in one of the four ways above mentioned. If he elects to use the ten dollars for the purchase of paid-up additional insurance, it is clear, from the very fact that he has ten dollars of divisible surplus available to him that the actual cost of his coverage named in the face of the policy has been one hundred dollars less ten dollars, or ninety dollars. He has in effect paid a premium of ninety dollars for the coverage provided in his policy and ten dollars for the paid-up additional insurance, or one hundred dollars in premiums which is the amount upon which the two per cent tax should be levied— and this is the amount of premium provided in the face of the policy. The statute makes provision for "a tax of two per cent (2%) on the gross amount of all premiums collected or contracted for on policies or contract of insurance, * * *" and not upon the amounts of insurance written.

 Where we must choose between two differing interpretations of the statute—under one of which the

method of computing the tax would be certain and unchanging from year to year, while by the other the manner of computation would vary annually according to the whim of the owners of the monthly intermediate and ordinary life policies—we are justified in presuming that the legislature intended that interpretation which makes for the simpler and more certain computation of the tax. One of the prime requisites in public taxation is ease and certainty of computation, and where the tax is levied upon the gross premium named in each policy, no matter what option the insured may choose to adopt, the element of indefiniteness and uncertainty is removed. When the amount of the tax to be levied each year depends upon how the various policyholders of a company decide to avail themselves of their options, there must be a rechecking of every policy and recomputation where necessary. It is entirely possible that a policyholder could elect each one of the four options in four successive years. If we followed the Attorney General's contention, that the amount of the tax on each policy could thus vary each year depending upon which option the insured had elected, it is evident that bookkeeping is greatly increased and certainty decreased. We doubt whether the legislature intended such a result. The simpler method of computing the tax which we here adopt would seem both more equitable and more certain.

We are further persuaded as to the correctness of our position by the Iowa cases interpreting the language of a statute of that state levying a percentage tax on "premiums received by it for a business done in this state." In *New York Life Ins. Co. v. Burbank*, 209 Iowa 199, 216 N.W. 742, the insurance company took the same position as the insurance company in the Cochrane case, supra, arguing that it could deduct from the base upon which premium taxes were to be computed: (a) all sums which it paid in cash to the policyholder for dividends; (b) the amount of all dividends applied against

the contract premium payments; (c) the deferred dividends paid in cash which had been previously left to accumulate at interest; and (d) all amounts paid in cash on the surrender of the policy. The Iowa Supreme Court held that the tax was upon the contract premium and none of the deductions made by the company were proper. The Iowa court cited the Cochrane case, supra, in its opinion.

In 1942, *Prudential Ins. Co. of America v. Green, et al.,* 231 Iowa 1371, 2 N.W. (2d) 765, 141 A.L.R. 1401, was decided. This case presented to the Iowa court the same question as the one under consideration in the instant case. The insurance commissioner there had required the company to pay under protest a tax not only upon the full contract premiums collected on the policy, but in addition a further tax on all dividends applied upon its policies in the form of paid-up additional insurance. Portions of the opinion in that case read as follows:

"The plaintiff herein is willing to pay the full tax upon the contract premiums fixed in the policies as required by the Burbank case. The question is, Must it go a step further and add to the tax thus computed an additional tax based upon dividends applied to provide paid-up additions? When we undertake to answer this question as applied to the industrial policies, the philosophy of the Continental Casualty Company case says that the answer should be 'No.' As to such policies the contract premium paid by the policyholder is constant. If, as a result of favorable experience as to income on investments, mortality rates, management, etc., the premium is more than the cost of the insurance, the full premium is earned by increasing the amount of insurance to that which the premium should buy. Can we then say logically that the contract premium has been increased? The reasoning of the Continental Casualty Company case says 'No.' The rule announced in the Burbank case does not require a different answer. *The tax is still paid on the full contract premium as there required.*

"When we come to the intermediate and ordinary life policies, the situation is different because the insured has an option. But does this require a different answer? *The insured still pays the same contract premium* and that premium is still earned in the same manner. There would be an element of unreasonableness in the application of a different rule. Under the rule of the Burbank case, the tax is the same even though the premium actually paid is reduced by the exercise of option ·3. This is because the statute is construed to mean that *the tax is based upon the contract premium* and does not authorize a reduction therefrom where the premium actually paid is reduced by application of a dividend. Would it be fair or reasonable to say that the statute contemplates that the tax be increased by adding to the contract premium the amount of such dividend when applied to provide paid-up additions to the amount of insurance? *If the statute does not contemplate any reduction from the contract premium because of the payment of dividends, to be consistent we must also hold that it does not contemplate any addition thereto because of the application of dividends."*

We conclude (1) on theory, and (2) from the presumption that the legislature intended a tax easy of computation and administration rather than an uncertain one, and (3) from authority, that the judgment of the trial court should be, and it hereby is, reversed.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE HOLLAND dissenting.

In the last analysis, the only question presented here is: When a policyholder applies any dividend due him or received by him, by virtue of the policy, toward payment of additional insurance, is the premium for the additional insurance taxable? To me, the question provides the answer. The policyholder could have received the dividend in cash and purchased as much insurance

as it would buy in another company and that company would have to report the transaction in its gross income revenue from premiums. The same would apply if he bought the additional insurance in the company from which he received the dividend. When he applied for additional insurance to the extent of his dividend, he released the company from the dividend, and if accepted, the company contracted for new or additional insurance for which it received a premium to the extent of the dividend. Any other reasoning would be to overrule the case of *Cochrane v. National Life Ins. Co.,* 77 Colo. 243, 235 Pac. 569.

It is self-evident that when the dividend was applied toward additional insurance, the insurer became liable for this additional insurance, therefore the original policy, together with the increased insurance, could not have been bought in the first instance for the original premium. What was once a dividend, the property of the insured, finally became a premium or payment for a modified policy of insurance. When received by the company, this money did not go into a dividend or surplus fund, it went into the premium account. For the original premium, the company would not have issued the additional paid-up insurance.

To quote from *Cochrane v. National Life Ins. Co.,* *supra,* "We are therefore of the opinion that the dividends should be considered as premiums collected or contracted for during the year and that the company is liable for the tax thereon."

I am clearly of the opinion that the judgment should be affirmed.