228 So.2d 708 (1969)
Francis A. DANNA
v.
COMMISSIONER OF INSURANCE, State of Louisiana.
No. 7799.
Court of Appeal of Louisiana, First Circuit.
November 17, 1969.
Rehearing Denied December 22, 1969.
Writ Refused February 6, 1970.
*709 Richard A. Cadwallader, Baton Rouge, for appellant.
Mary M. Robinson, Baton Rouge, for appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
This appeal is from the judgment of the lower court denying and rejecting the petition of plaintiff Francis A. Danna, former employee of the Insurance Department of Louisiana, for a declaratory judgment classifying certain items as "premiums" subject to annual license taxes provided by statute. We find that the trial court properly held the items involved in this controversy were not "premiums" within the intendment of the applicable law.
Plaintiff's petition poses only questions of law, namely, whether (1) dividends applied to purchase paid-up additional insurance; (2) employer-employee contributions to group insurance plans covering a life insurance company's own officers, employees and agents, and (3) premiums or annuity contract considerations waived under the waiver of premium provisions of life insurance, are "direct premiums" within the terms of LSA-R.S. 22:1066, and therefore subject to the annual license tax provided in Section 1061, above.
The petition prays that the above mentioned items be declared taxable under the pertinent law and requests a mandamus from the court directing defendant Commissioner to henceforth collect the applicable tax on each such item.
The statutory provisions pertinent herein are LSA-R.S. 22:1061, 22:1066 and 22:5 (7), which read as follows:
LSA-R.S. 22:1061:
"There is hereby levied an annual license tax for the year 1949, and for each subsequent year on each domestic, foreign and alien insurer, engaged in the *710 business of issuing insurance policies, contracts, or obligations, or issuing endowment or annuity policies, or other similar forms of contract obligations in consideration of the payment of a premium or other consideration for the issuance of such policies, contracts or obligations, whether such insurer be operating in this state through an agent or other representatives or otherwise. Such license shall be fixed and graded according to the rates and classifications set forth in this Part, and shall be based on the gross amount of annual premiums on all risks located in this state in the case of insurance and endowment policies, contracts, or obligations, and in the case of annuity or similar contracts or obligations, upon the gross amount of annual premiums on such policies issued to persons located in Louisiana, without deduction in either case for dividends paid or credited to policyholders."
LSA-R.S. 22:1066:
"The annual premiums referred to in the foregoing sections of this Part shall be the gross amount of direct premiums for the preceding year less return premiums without any deductions for dividends paid or otherwise credited to policyholders, and without consideration for reinsurance."
LSA-R.S. 22:5(7):
"In this Code, unless the context otherwise requires, the following definitions shall be applicable:
* * * * * *
(7) `Premium' as used in this Code means all sums charged, received or deposited as consideration for the purchase or continuance of insurance for a definitely stated term, and shall include any assessment, membership, policy, survey, inspection, service or similar fee or charge made by an insurer as a part of the consideration for the purchase or continuance of insurance."
The lower court held the items in question were not taxable pursuant to Sections 1061 and 1066, above. The court reasoned that dividends were not "premiums" as contemplated by the statutes because Section 1061 permits no deduction from contract premiums when dividends are returned to the insured, consequently the Section could not be construed to envision additions to premiums when dividends were utilized to purchase paid-up insurance. The trial court also held that money paid by employers and employees on group insurance policies issued by an insurance company to its own employees, does not constitute "premiums" within the meaning of the applicable statute. The court reasoned that monies so paid are not received incident to the insurer's "doing business" because of the absence of solicitation on the insurer's part. In addition the court found a waiver of premium to be a mere incidental benefit of the policy. The court also held that since there were no premiums paid during periods of disability, there were no premiums to be taxed. Appellant urges the trial court erred in each said holding.
Regarding dividends as alleged premiums, appellant contends "premium" represents any sum or consideration applied toward the purchase of insurance. Appellant also maintains that since Sections 1061 and 1066, above, impose a tax on "the gross amount of premiums", a dividend applied to paid-up insurance must be deemed consideration within the meaning of the phrase "gross amount of premiums". Appellant further argues it is anomalous to hold dividends taxable as premiums when dividends are used to purchase new insurance with the same company or to secure a policy with another company, but to consider dividends not to be premiums when used for the purpose of buying paid-up insurance. In this respect appellant notes Sections 1061 and 1066, above, impose the license tax on "premiums", not on contract amounts paid at policy issuance.
Appellant asserts that when an employer, not engaged in the insurance business and *711 its employees each give consideration for a group insurance policy, such payments or contributions are premiums within the scope of Sections 1061, 1066 and 5(7), above. Therefore, according to appellant, exempting such payments from the tax when an employer-insurer issues the policy on its own employees discriminates against the insurer who must pay the tax on a policy of group insurance written for the employees of a third party employer-insurer. Appellant then points out that under the Commissioner's interpretation, discrimination of this nature results in contravention of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.
As regards waiver of premium, appellant argues that upon disability occurring, premiums are paid by the insurer through a mere bookkeeping entry by which a credit is extended the individual policy holder from the insurer's "surplus" or "reserve" accounts. Therefore, according to appellant, waiver of premium means in fact that the insurer agrees to pay the premium on behalf of the insured so long as disability lasts. In effect, therefore, appellant contends a consideration is deposited and credited to the individual policy making the amount taxable as a premium.
Insofar as our own jurisprudence is concerned, the subject matter of this litigation is presented as a matter of first impression. We note, however, pertinent authorities from other jurisdictions which will be the subject of subsequent discussion.
We observe further certain well established rules of statutory construction germane to the questions herein presented.
Statutes levying taxes are to be strictly construed. Collector of Revenue v. Mossler Acceptance Co., La.App., 139 So.2d 263.
Any doubt or ambiguity concerning the terms of a tax statute must be resolved in favor of the taxpayer. United Gas Corporation v. Fontenot, 241 La. 564, 129 So.2d 776.
The meaning of a word, clause, or sentence in a statute must be determined in the light of the statute as a whole, to the end that the entire law may be construed in harmony with its objects and purposes as therein announced. Washington Parish Police Jury of La. v. Washington Par. Hosp. S. D., La.App., 152 So.2d 362.
The rule of contemporaneous construction is recognized and applied in this state. The effect of the rule is that when the meaning of a statute is in doubt, the interpretation of those charged with its enforcement will be given substantial weight. Esso Standard Oil Co. v. Crescent River Port Pilots Ass'n, 235 La. 937, 106 So.2d 316.
Opinions of the Attorney General of Louisiana, though not binding upon the courts, are persuasive. State ex rel. Saint v. Toups, La.App., 95 So.2d 55.
It is conceded the Commissioner has consistently interpreted premium, as the term is employed in the statutes involved, to be non-inclusive of all three forms of contributions or payments concerned herein. The Attorney General of Louisiana has ruled likewise. See unreported opinion of the Attorney General of the State of Louisiana rendered to the Honorable Dudley Guglielmo, Commissioner of Insurance, March 1, 1966.
In considering whether premiums applied to the purchase of paid-up insurance constitute premiums within the intent of the laws in question, we initially note Section 1066 expressly states premiums subject to the tax "shall be the gross amount of direct premiums for the preceding year * * * without any deductions for dividends paid or otherwise credited * * *." (Emphasis supplied by the court.)
We note Section 1061, above, levies the tax in question on insurers "engaged in *712 the business of issuing insurance policies * * *." Section 1066 expressly levies the tax on "the gross amount of direct premiums." Section 5(7) defines premium "all sums charged, received or deposited as consideration for the purchase * * * of insurance. * * *"
It would appear from the language of the pertinent sections that the tax was intended to be levied on the privilege of engaging in the insurance business in the ordinary sense of the word. That is, where the insurer operates primarily for profit and to this end advertises for and solicits business. Also of significance is the qualification of "premium" in Section 1061 by the preceding adjective "direct". Just what the legislature meant by "direct premium" is not made clear by the language of this particular section. Adverting to Section 5(7) does little to remove the apparent uncertainty as to what the term "direct premiums" was meant to include.
Under the circumstances we find the statute vague and uncertain and lend considerable significance to the interpretation placed upon it by the Commissioner who is charged with its enforcement.
Similar statutes of other jurisdictions have been interpreted as not imposing a license tax on dividends applied to paid up insurance. See Prudential Ins. Co. of America v. Kavanaugh, 125 Colo. 93, 240 P.2d 508; Williams v. Massachusetts Mutual Life Insurance Company, 221 Tenn. 508, 427 S.W.2d 845, and Prudential Insurance Co. of America v. Green, 231 Iowa 1371, 2 N.W.2d 765, 141 A.L.R. 1401.
In the Kavanaugh and Green cases, above, the courts held that since the statutes concerned (as does ours here) provided that, in computing the tax, no reduction from the contract premium would be allowed, it must be assumed no addition was intended because of the application of dividends to the purchase of additional insurance. These same authorities also indicated that characterizing dividends applied to paid-up insurance as premiums would render less certain the annual amount subject to tax. We are in accord with these observations.
We agree with the conclusion reached in Williams v. Massachusetts, above, to the effect that dividends used for paid-up insurance are not taxable on the ground they represent additional premiums paid on the original policy. In this connection we note that only one premium is provided for in an insurance policy. Payment of a dividend does not change the amount of the premium due and to be paid. The insurer receives nothing more than the premium stipulated. Application of the dividend to paid-up insurance does not augment the amount of premium paid. The paid-up insurance issued as a result is merely a contemplated benefit forming an integral part of the contract. These circumstances, coupled with the fact that the Commissioner and the Attorney General have so interpreted the statutes, lead us to conclude dividends applied to paid-up insurance do not constitute premiums as contended by appellant.
We next consider whether payments on group policies made by insurer-employers and their employees on policies issued by the former to the latter, are taxable as premiums under Section 1061, above. We note this question must be determined in the light of three general circumstances, namely: (1) an insurer-employer issuing a group policy to its own employees; (2) an insurer issuing a group policy to the employees of another employer-insurer, and (3) an insurer-employer creating a fund for disability payments.
No contention is made here that payments by an insurer-employer and its employees to another insurance company for group insurance are exempt from the tax. We gather from the argument and briefs that it is conceded payments in this category are taxable as premiums.
It has been previously shown the tax in question was intended as a tax on the *713 privilege of engaging in the insurance business in the usual, ordinary and customary manner, meaning primarily insurance as a profit enterprise. Payments on a group policy issued by an insurer-employer to its own employees is not business in the usual, ordinary and customary manner. There is no solicitation and no advertising for this particular type of business. The profit motive is absent in such instances. The end product is not the result of business in the usual manner; it is a negotiated benefit incident to the employer-employee relationship. It is a concession or grant by the insurer to its employees to cement the employer-employee relationship and thus hopefully promote employee loyalty and good will with the expectation of resultant increase in employee efficiency. The contribution of the employer in such instances is deductible as a business expense. Here there is in effect no purchase of insurance because the contract is not founded on a purchaser-seller basis. Rather its foundation is primarily the employer-employee relationship, the rationale of which is that mutual interests of each, independent of the coverage provided, will thereby be enhanced for reasons having no direct relationship to the insurance business as such. We hold, therefore, payments on group policies issued by an employer-insurer to its own employees are exempt from the tax in question.
We find no merit in appellant's argument that exemption of such payments to a group policy issued by an employer-insurer to its own employees unconstitutionally discriminates against insurers who must pay the tax on premiums paid for group policies written for the employees of a third party employer-insurer.
Granted there may be no statutory discrimination in the application of a statute unless the distinction is based on differences reasonably related to the purposes of the statute. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485. Here the purpose of the act is to tax the privilege of engaging in the insurance business in the usual and ordinary sense of the meaning of the term. In this case we find no discrimination whatsoever. Each employer-insurer is afforded equal treatment. If such employers insure their own employees as a group, the amounts paid are exempt. If any such employer issues group insurance to the employees of another such employer, the amounts paid thereon are taxable.
Regarding whether "waivers of premiums" are taxable, we note the stipulation of record refers to "premiums waived under disability or other contract provisions."
In this connection we deem it sufficient to say the statute taxes only premiums paid. It does not purport to tax premiums which, by the express terms of the policy, need not be paid because they are waived due to the occurrence of a stipulated contingency. Premiums waived are not "paid" and are not taxable according to the express language of the statute.
The judgment of the trial court is affirmed, at appellant's cost.
Affirmed.