303 So.2d 855 (1974)
Helvius L. THOMPSON
v.
EAST BATON ROUGE PARISH SCHOOL BOARD.
No. 10021.
Court of Appeal of Louisiana, First Circuit.
November 12, 1974.
Rehearing Denied December 16, 1974.
*856 Woodson T. Callihan, Baton Rouge, for appellant.
John F. Ward, Jr., Baton Rouge, for appellee.
Before LOTTINGER, COVINGTON, and BAILES, JJ.
CONVINGTON, Judge.
This is a proceeding in which plaintiff, Helvius L. Thompson, seeks to have an alternative *857 Writ of Mandamus, heretofore directed to the East Baton Rouge Parish School Board, be made peremptory, thereby reinstating him as a teacher at the Valley Park Continuing Education Center with full back pay to August 1, 1973.
The trial Court denied relief to the plaintiff and he has appealed. After reviewing the entire record, including the stipulations of both the plaintiff and defendant, we conclude that the judgment of the trial court was correct, and adopt the excellent written opinion of the trial judge as our own:
According to the stipulated facts plaintiff has been employed since 1950 by the East Baton Rouge Parish School Board as a part-time teacher in the Veterans Education Program and during the entire time of his employment he was, and still is, a full-time employee of The United States Postal System, having been so employed since April 1, 1947. Until 1965, it is unrefuted that Mr. Thompson taught five (5) hours per day, five (5) days a week; and, from 1965 until he was dismissed in 1973, he taught three and one-half (3½) hours per day, four (4) days per week. On July 23, 1973, Mr. Thompson found a letter on his classroom desk written by the director of the Continuing Education Program advising Mr. Thompson that the last day of his employment as a teacher in the Veterans Program would be July 31, 1973 and that another teacher would replace him August 1, 1973. No reason was given for his dismissal. Plaintiff alleges and contends that he is a "Permanent Teacher" within the meaning of the Louisiana Teacher Tenure Law (LSA R.S. 17:441 et seq.) and may only be dismissed for cause and after a hearing on the charges in accordance with R.S. 17:443. The sole basis for plaintiff's suit for reinstatement and payment of salary is that he was not dismissed in accordance with the Teachers' Tenure Act. The issue to be decided is whether plaintiff is a permanent teacher within the meaning and protection of the Teacher Tenure Act (LSA R.S. 17:441-445).
The defendant contends that the plaintiff is not a permanent teacher because he is a part-time teacher. Defendant points out that the Department of Education has never considered part-time teachers tenured.
Defendant alleges that the Veterans Program was not instituted until after the enactment of the tenure law, and, therefore, never contemplated by the Legislature so the statute must be construed to give it the meaning the Legislature intended and avoid absurd results. Defendant, as an aid in ascertaining legislative intent, urges the court to apply the doctrine of contemporaneous construction. The effect of the doctrine is that where administrative departments have interpreted a law over a period of time, the courts (because of the injury that would result to those who have followed the administrative interpretation) will not disturb that interpretation even though they might disagree. Delta Life Ins. Co. v. Martin, 59 So.2d 465 (La.App. 1st Cir., 1952).
Defendant further contends that the Veterans Program is supported totally by federal funds and under the ruling of our Supreme Court in Hayes v. Orleans Parish School Board, 256 La. 677, 237 So.2d 681 (1970), the tenure law is inapplicable to a teaching position within this program.
The Teacher's Tenure Law provides:
LSA R.S. 17:441
"As used in this Sub-part, the word `teacher' means any employee of any parish or city school board who holds a teacher's certificate and whose legal employment requires such teacher's certificate."
LSA R.S. 17:442
"Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss *858 or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.
Any teacher found unsatisfactory by the parish or city school board, as the case may be, at the expiration of the said probationary term, shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification, such probationary teacher shall automatically become a regular and permanent teacher in the employ of the school board of the parish or city, as the case may be, in which he has successfully served his three year probationary term; all teachers in the employ of any parish or city school board as of July 31, 1946 who hold proper certificates and who have served satisfactorily as teachers in that parish or city for more than three consecutive years, are declared to be regular and permanent teachers in the employ of the school board of that parish or city."
LSA R.S. 17:443
"A. A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the State of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least fifteen days in advance of the date of the hearing, the school board shall furnish the teacher with a copy of the written charges. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at the said hearing. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
B. If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, or of incompetency, or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the State of Louisiana, and ordered removed from office, or disciplined by the board, the teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board."
The stipulated facts also show that plaintiff holds a teacher's certificate and the teaching position for which he was employed required such a teacher's certificate. Further, he did teach in this position for more than three years. Under R.S. 17:441, Mr. Thompson fits the definition of "teacher" and since there are no provisions excluding part-time teachers or requiring that a teacher work a certain number of hours per day before the act is applicable it would appear that he became a "permanent" teacher by the operation of and within the meaning of R.S. 17:442.
There is no basis in the Teacher's Tenure Law for distinguishing part-time teachers. We note that R.S. 17:441 refers to "any employee". The sole requirement mentioned in the statute for becoming a permanent teacher is serving a successful "probationary term of three years".
*859 The defendant's argument, that had the Legislature been aware of the existence of part-time teaching positions at the time it enacted the statute in question it would have excluded such teachers from the provisions of the act, is without merit. The source provision of the Teacher Tenure Law in its present form is Act. No. 58 of 1936. At that time there were already statutes in effect which provided for evening schools, schools for adults (R.S. 17:151, Acts 1922, No. 100 Sec. 21) and part-time schools (R.S. 17:291, Acts 1932, No. 70 Sec. 1). It must be presumed that the Legislature was aware of positions for part-time teachers and it made no attempt to exclude such teachers from the provisions of the Act under scrutiny. This is not to say, however, that the Legislature had in mind at the time of enactment of the Teacher Tenure Law (1936) teaching positions in a Veterans Education Program which would be funded directly or indirectly with federal monies.
In attempting to construe the intent of the Legislature in this regard, it is not only pertinent to note that the Veterans Program was not instituted until after the enactment of the tenure law, but, because the tenure law itself is ambiguous and susceptible of two reasonable interpretations in this regard, weight may be given to the doctrine of contemporaneous construction. See Delta Life Insurance Co. v. Martin, supra; State v. U-Drive It Car Co., La. App., 79 So.2d 590 (1955); and, Washington v. St. Charles Parish School Board, La., 288 So.2d 321 (1974). One may argue equally well that on the one hand the Legislature intended to include all part-time teachers under the tenure act; and, on the other hand, it did not intend to include such teachers if their services were utilized in programs funded by the federal government, such as the Veterans Education Program. The fact that the Act is silent in this regard does not, in our opinion, render it unambiguous. Certainly, its language permits of either interpretation.
Facts from which the contemporary construction of the Teacher Tenure Law with regard to persons in plaintiff's status may be derived are stipulated in this case. The plaintiff stipulates (paragraph 3) "___ the East Baton Rouge Parish School Board does not consider part-time employees such as Mr. Thompson as acquiring tenure under such law."
It is stipulated (paragraph 4) that if Ms. LaVergne Knots, Director of the Bureau of Adult Education of the Louisiana State Department of Education were called, she would testify " that to her knowledge, part-time employees in such programs have never been considered as acquiring tenure in the school system in which they are employed."
It is stipulated (paragraph 5) that if Mr. T. J. Smith, Director of the Adult Education Program for Veterans for the Louisiana State Department of Education were called, he would testify " that to his knowledge, part-time employees in such programs have never been considered as acquiring tenure in the school system in which they are employed."
It is stipulated (paragraph 6) that if Dr. Donald L. Hoover, General Coordinator for Instruction for the East Baton Rouge Parish School Board were called, he would testify that " since 1970, approximately 37 teachers have been dismissed from the part-time positions in the Veterans Education Program without any hearing or other procedures required by the Louisiana Teacher Tenure Law for teachers who acquire tenure in the school system, and the East Baton Rouge Parish School System has never considered or treated such part-time employees as acquiring tenure."
It is stipulated (paragraph 7) that if Mr. James D. Prescott, Executive Director of the Louisiana School Boards Association were called, he would testify " that to his knowledge, no school or school system in the State of Louisiana has ever considered *860 part-time employees in the Veterans Education Program as acquiring tenure in the school system under the Louisiana Teacher Tenure Law."
It is clear from the above evidence that the contemporary construction of the Louisiana Teacher Tenure Law is to the effect that part-time employees in the Veterans Education Program, such as the plaintiff, do not acquire tenure. The relevant administrative practice is well settled and serves as a fair index of the legislative intent sought to be ascertained. Applying other recognized interpretative standards for legislation we find the intent behind the tenure law to be consistent with the aforesaid contemporary construction. We hold, therefore, that it was not the intent of the legislature under the Teachers' Tenure Act to afford the plaintiff herein the relief he seeks.
Pretermitting the above conclusion as to legislative intent, this court finds the case of Hayes v. Orleans Parish School Board, 256 La. 677, 237 So.2d 681 (1970) to be analogous to and decisive of the one under consideration. We feel compelled to follow the ruling in Hayes and hold that the Teachers' Tenure Law is inapplicable to the position previously held by the plaintiff in the Veterans Education Program. Admittedly, the case is not "on all fours" factually but the essential reasoning and interpretative thrust is more than persuasive.
In Hayes, the Supreme Court held that the Teachers' Tenure Law applies only to "offices" regularly maintained and supported by state revenue and not to programs funded by "massive infusions of federal funds". The teacher therein had already acquired permanent status. She had been transferred to the Teachers' Aid Program as supervisor. When the federal program terminated at the end of one year she was returned to her former position which was a lower-paying position. Plaintiff contended that she had acquired tenure in the Teachers' Aid Program and could only be reassigned to a position of equal pay and status, otherwise the reassignment would amount to dismissal without cause. It should be noted that the court had before it for consideration the Orleans Parish Teacher Tenure Law, LSA R.S. 17:461-463, however, its provisions are virtually identical to those of the Teacher Tenure Law in question here.
The Court held that within the intendment of LSA R.S. 17:462 (same language as in R.S. 17:443), the "office" means a regular position in the school system maintained by recurring state or local revenues and that plaintiff had not been employed in such a position and, therefore, could not avail herself of the Tenure Law. In so holding the Court said:
"The tenure provision was obviously included to assure the continued employment of worthy teachers within the regularly maintained school system, a system built upon state and local revenue. Massive infusions of federal funds, resulting in a proliferation of special, short-term programs, were never contemplated. The major premise of the legislation was that public education was a state and local responsibility." ...
"When the tenure provision is read in the light of its history, the intent of the lawmakers becomes clear. The positions they sought to protect were those in the regularly maintained school system. These positions were sustained by recurring revenues, over which they had a measure of control.
"It is true the statute at no place defines the term office. To apply the term, however, to a position in a special project created and maintained by federal funds produces an absurd result. It freezes the higher salaries of these projects into the state educational system, with no assurance that the system has adequate revenues to pay them.

*861 "Within the intendment of the LSA R.S. 17:462, office means a regular position in the school system maintained by recurring state or local revenues. We conclude it is inapplicable to a position in the special Teachers' Aide Project, funded under the United States Elementary and Secondary Education Act. It follows that plaintiff acquired no permanent status as a supervisor."
The Supreme Court in Hayes reasoned that if an employee were allowed to acquire tenure by appointment to a federally funded program, a heavy economic burden would settle upon the local school boards. The Court considered such a result inconsistent with the tenure law, for the only positions the Legislature sought to protect were "those in the regularly maintained school system ... sustained by recurring revenues, over which they had a measure of control."
Funding for the Veterans Education Program is ultimately through the Veterans' Administration of the U.S. Government. The funds are collected by the school board from the students enrolled in the program. The students receive the funds from the Veterans Administration. The facts show that as the number of veterans participating in the program increases or decreases, the number of part-time teachers increases and decreases. Although the Veterans' program has been operating for over 20 years, it is sustained by federal funds and not by recurring state or local funds over which the school system has a measure of control. Accordingly, plaintiff acquired no permanent status and is not entitled to reinstatement and pay.
For the foregoing reason, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.