PRICE, Judge.
This is an appeal from the judgment rendered by the district court in two consolidated suits brought by plaintiff objecting to the candidacy of the defendants in a forthcoming election. In compliance with the provisions of R.S. 18:364 requiring disposition of cases of this type within twenty-four hours after submission, we orally affirmed the judgment of the trial court declaring the defendants ineligible and disqualified to be a candidate in the November 1, 1975 primary election for the House of Representatives for District 15.
In written reasons for judgment the trial judge has concisely stated the issues and factual background giving rise to these actions. As we agree with the reasons ad *310 vanced by him for his decision, we find it appropriate under the circumstances to adopt the substantial portion of his reasons as our opinion in this matter, as follows :
“These two suits have been consolidated for trial because the basic issue of law is the same and the facts are not dissimilar.
“Shady Wall, a qualified elector and a candidate for the office of state representative from District IS of Ouachita Parish has filed an objection to the candidacy of Herbert E. Henry and Ralph H. Marri-oneaux on the basis that they failed to comply with the provisions of R.S. 18:391 in that they did not file a written notification of their intention to become a candidate accompanied by a declaration under oath that to the best of their knowledge and belief they are duly qualified electors under the Constitution and laws of this state.
“Made parties defendant are Herbert E. Henry, Ralph H. Marrioneaux and the Democratic Representative District Committee for District IS.
“The two individual defendants filed exceptions of no right of action urging that Mr. Wall was without authority to object to the candidacy of the two defendants on a question of procedure, as is involved here. While agreeing that he could validly object on questions of substance, they suggest that the only one entitled to object to procedural matters is the District Committee.
“R.S. 18:396 provides in part:
‘Any person who has filed his application to become a candidate or any other qualified elector may object to the candidacy of any other person. The objection . shall be in writing and by petition and shall contain, in detail, the reasons for the objection . . . ’
“It was established that the plaintiff is a qualified elector and also has filed his application to become a candidate. There is no other qualification required by the statute nor is there any mention of any specific grounds which must be alleged.
“While no case exactly in point was cited to the court, there are at least two cases in which the courts have been required to rule on objections to candidates: Rousseau v. Democratic Parish Executive Committee for Parish of St. Martin, 164 So. 175 (1st Cir. 1935), Writ Refused 165 So. 166 and Hardy v. Jackson, 253 So.2d 647 (2nd Cir. 1971).
“In the former case the objection was based on procedural grounds and in the latter on substantive grounds. In neither case was the plaintiff’s right to file the suit challenged and the court did not of its own motion consider the question. The challenges were accepted without comment.
“Since neither the statute which has been on the books for over forty years nor the jurisprudence has limited the reasons to be urged by certain objectors, the court does not consider that it has the authority to impose such a limitation as is herein urged.
“The exception in each case is, therefore, overruled.
“It is noted that the Democratic Committee, also named a defendant in each suit, did not file such an exception.
“The main issue in each case is the validity of the ‘declaration under oath’ which each candidate is required by R.S. 18:391 to file.
“As first enacted in 1930 the statute setting forth the documents which each candidate must file with the Democratic Committee did not require the ‘declaration’ to be ‘under oath’, but in 1932 the legislature added these words and they have been with us continuously to date.
“Unfortunately there is no statutory authority dealing with the formality which *311 must be observed in order to constitute a declaration under oath.
“In 1935 the First Circuit Court of Appeal considered the first case brought under this section, the Rousseau case, cited supra. There the objection was levelled at the fact that although the candidate knew what he was doing and was mindful of the seriousness of the occasion, the notary public before whom he had signed the declaration hadn’t made him take oath. Rousseau had merely signed the paper attached to the notification without having been actually sworn.
“The court quoted from Ruling Case Law with approval:
‘But while a large liberty is thus given to the form of the oath, some form remains essential. Something must be present to distinguish between the oath and the bare assertion. An act must be done and clothed in such form as to characterize and evidence it. This is so for the double reason that only by some unequivocal form could the sworn be distinguished from the unsworn averment and the sanctions of religion add this solemn and binding force to the act. Hence to make a valid oath, there must be in some form in the presence of an officer authorized to administer it, an unequivocal and present act by which an affiant consciously takes upon himself the obligation of an oath.’ (Emphasis supplied)
“The court noted that notaries public have the right to administer oaths. And it found that in signing the declaration before the notary he intended to take a formal oath and did so within the purview of the law. The formality of actually being sworn by the notary was held not important.
“The Supreme Court in declining to review the case said:
‘If a strict interpretation is placed upon the language of the Primary Election Law (Act No. 97 of 1922, as amended), and the notice of intention to become a candidate and the affidavit accompanying the notice are considered in that light, the candidate has not properly qualified. But, in previous decisions of this court, we have repeatedly said that, since the right of the people to choose their public officials is indirectly affected, and this being the fundamental principle involved in all elections, a liberal construction should be placed upon the provisions of the statute.
‘The Court of Appeal treated the case in a liberal manner, which was in accordance with the announced policy of this court. Therefore, its judgment is correct . . . . ’
“In the instant cases there was no notary public present when these defendants executed their declarations. Each took his papers to J. R. Preddy, chairman of the committee, and in his presence executed their signatures, although each knew that on the face of the papers the signature of a notary was required. In fact, Henry a few years back had been a notary himself.
“In the case of Ralph Marrioneaux, Preddy after reminding him of the necessity of his signature being notarized made a telephone call requesting that a notary be sent to his office for that purpose. Although Preddy testified he telephoned in the presence of Marrioneaux, Marrioneaux was unable to remember the substance of the phone conversation.
“Marrioneaux, however, left before the notary arrived and never saw the notary who signed his papers.
“Neither Preddy nor Henry made an attempt to get a notary for him while they were together. Henry accepted the assurance of Preddy that he would handle the papers and there was nothing else for him to do.
“Counsel for defendants urge upon the court that public policy dictates that elec *312 tion laws should be construed so as to foster representation of political parties to the end that the electorate may review the widest possible choice of candidates, citing Rich v. Martin, 259 So.2d 113 (1st Cir. 1971). This court is in complete accord with that principle enunciated. Therefore, they urge that the expression ‘in the presence of an officer authorized to administer’ oaths, does not limit the officer to a notary public.
“In support of this contention is cited the case of Planche—Locke Securities, Inc. v. Johnson, 197 So.2d 178 (3rd Cir., 1966) in which an appraiser executed his appraisal under oath ‘before a deputy sheriff who was not a notary public. The statute — R. S. 13:4365 — required that ‘an appraiser shall take an oath to make a true and just appraisement of the property’. Nevertheless, the court upheld the validity of the appraisal saying:
‘We are convinced that both of them were aware of their acts in affixing their signatures to the form of the appraisal and since the document which they signed recited that it was “Sworn to” before the deputy sheriff, we think they clearly understood that in affixing their signatures to the forms of appraisal they were taking the oath required by LSA-R.S. 13.4365.’
“Thus, it is urged that the presence of a notary public is not sacrosanct, but that the chairman of the committee could be recognized, by the court just as the deputy sheriff was in the Plauche-Locke case.
“The Supreme Court of Louisiana, however, in the recent case of State v. Snyder, 304 So.2d 334 (1974), cited the Rousseau case with approval, saying:
‘While this court has never passed upon the formality required to constitute a declaration under oath, it has been generally held that to constitute a valid oath, there must be, in the presence of a person authorized to administer it, an unequivocal act by which the affiant consciously takes on himself the obligation of an oath. It is sufficient that both the person swearing and the officer administering the oath understand that what is done is proper for the administering of the oath and all that is necessary to complete the act of swearing. We agree with this generally accepted rule of law.’ (Emphasis supplied)
“In that case the issue was the form of oath taken before a notary public. The court recognized the necessity of a notary public or other official authorized to administer oaths.
“No authority has been cited to this court recognizing the chairman of a political committee as an official authorized to administer oaths in this instance.
“Assuming arguendo that the court should recognize the chairman of the committee as an officer before whom an oath can be taken, in our cases the chairman did not act in that capacity. Mr. Preddy waited until after the notary had arrived and signed the papers before he affixed his signature to the certification. In the case of Marrioneaux he did not sign until 4:55 P.M. and he was very concerned because 5:00 P.M. was the deadline for qualifying.
“Since the Snyder decision the legislature has reenacted the Primary Election Statute (Act 1 of 1975). The pertinent section is now R.S. 18:391. Despite the cases cited above (and the Legislature is presumed to be aware of them) no effort was made to make any clarification. The court must, therefore, conclude that the legislature was satisfied with the previous expression of the courts.
“See also Neely v. State of Louisiana, Department of Public Safety, 308 So.2d 880 (2nd Cir. 1975).
“Defendants next urge this court to apply the doctrine of ‘contemporary construction’ of statutes as enunciated in several cases, the latest of which is Thompson v. *313 East Baton Rouge Parish School Board, 303 So.2d 855 (1st Cir. 1974): p. 857.
‘The effect of the doctrine .is that where administrative departments have interpreted a law over a period of time, the courts (because of injury that would result to those who have followed the administrative interpretation) will not disturb that interpretation even though they might disagree. Delta Life Ins. Co. v. Martin, 59 So.2d 465 (La.App. 1st Cir. 1952).’
“Also as stated in Danna v. Commissioner of Insurance, 228 So.2d 708, 711 (1st Cir. 1969, Writ Refused).
‘The rule of contemporaneous construction is recognized and applied in this state. The effect of the rule is that when the meaning of a statute is in doubt, the interpretation of those charged with its enforcement will be given substantial weight. Esso Standard Oil Co. v. Crescent River Port Pilots Ass’n., 235 La. 937, 106 So.2d 316.’
“In this respect there was testimony that in the past at least two District Committees in Ouachita Parish including this one had permitted candidates to sign the declaration outside the presence of a notary public with the notary coming in later to notarize the signature. This however, did not always take place.
“Thus it is urged that the candidates were justified in relying upon the chairman to get their papers notarized after they had left.
“The court does not believe that that doctrine is applicable here, but, if so, the facts are such that it should not be applied.
“In the first place, the forms which were used were supplied by the Secretary of State, an officer who has direct supervision over our election procedures. This form under the line designated for the signature of the candidate recited: ‘Sworn to and subscribed before me’ emphasis supplied) followed by a line designated for the signature of the notary.
“Secondly, there was a court decision (Rousseau) advising that in such instances the oath had to be made in the presence of an officer authorized to administer oaths.
“The practice of the committee, was, therefore, to disregard these instructions and place its own procedure into effect when candidates showed up without having their papers previously notarized. Thereby, candidates acting in complete good faith were led to leave their papers with the committee chairman for later notarization.
“There was no evidence that the candidates were informed of this practice or were relying on this so-called practice. They merely accepted the opportunity afforded them by the chairman.
“On the other hand, there were candidates in the past as well as those present who arrived with their papers properly notarized.
“Thus the committee was applying a dual standard.
“It is unfortunate that because of the failure in these cases to have the declaration properly notarized the public is being deprived of an opportunity to select among several worthy candidates, but the court feels that it is bound by the words of the statute and the decisions cited above.”
For the foregoing reasons we reiterate our previous oral decree that the judgments appealed from are affirmed at appellants’ cost.