Dear Mr. O'Rear:
You have requested an opinion of the Attorney General regarding the payment of fees for the care and maintenance of a veteran/patient (the "Veteran") previously housed at the Louisiana War Veterans' Home ("Home").
The following discussion reflects the factual scenario giving rise to your inquiry. This information was compiled from discussions with the patient's family members, representatives of the Home and the Louisiana Department of Veterans Affairs (Department), and personnel at the United States Veterans Administration ("V.A."), as well as documentation submitted by interested parties.
The Veteran was admitted to the Home on October 22, 1985, having spent the previous eighteen years in the V.A. Medical Center ("Center"), a federal psychiatric facility located in Gulfport, Mississippi. During his stay at the Center, the Veteran's Social Security and pension compensation benefit checks were deposited into his custodial account. Upon discharge, the account was closed and the balance of $79,400.23 was remitted to the Veteran's curator/brother ("Curator"). The funds were initially placed in a savings account. In November of 1986, the account was converted into an insurance annuity fund.
The financial statement accompanying the application for admission to the Home reflected the Veteran's sole source of income to be $331 per month from the Social Security Administration. Based on this financial data, the Home set the Veteran's monthly care and maintenance fee at $260. Subsequent thereto, the Curator confirmed that the Veteran had additional assets totaling $2,500 in a savings account. As a result of this disclosure, the Home increased the care and maintenance fee to the maximum $1,200 per month. The Curator did not contest this increase.
In addition, by letter dated October 16, 1986, the Home's Business Administrator requested the V.A. to remit to the Home,via direct payment from the Veteran's compensation benefits, $900 per month to apply to this fee increase. This request was made under the assumption that the Veteran's Curator was receiving the benefits.
The V.A. responded by letter of inquiry dated May 20, 1987, indicating that the Veteran's pension benefits had been suspended, and asking why the Curator could not make payments for care and maintenance from the Veteran's accumulated estate of approximately $80,000. Having no record of the referenced estate, the Home requested the Curator to submit a current income and net worth statement. A current statement was forthcoming which identified the additional monies in the insurance annuity fund.
After reviewing the statement, the Home, by letter to the Curator dated June 30, 1987, imposed the previously assessed $1,200 fee retroactive to March 1, 1986. Upon notification, the Curator immediately forwarded checks in the amounts of $15,040 and $1,264, for periods March 1986 through June 1987 and July 1987, respectively. This maximum fee remained in effect until the Veteran's death in February, 1995. By this time, the annuity fund had been reduced to a balance of less than $1,000.
The Veteran's family now questions the Home's legal authority to establish the maximum monthly care and maintenance fee by taking into account the Veteran's insurance annuity fund in the amount of $79,400.23, and applying the fee retroactively.
We find the above facts to be relatively free from dispute. We turn now to the statutory provisions and rules and regulations governing the Home which we believe are relevant and material to our resolution of this issue.
The statutory provisions authorizing the State to operate and maintain veterans hospitals and care facilities are found at R.S.29:381, et seq. Section 383 provides the following with respect to charges for care and maintenance:
 "At the discretion of the department of veterans' affairs, reasonable rates may be charged for maintenance and care to those veterans who are capable of paying for any or all of the use of the facilities. In determining whether or not a veteran is capable of paying for the use of the facility, the department of veterans' affairs shall establish by the adoption and promulgation of rules and regulations a charge system of taking into consideration the income and estate of the veteran receiving care." (Emphasis added.)
The State adopted and published rules pertaining to eligibility and the collecting and handling of fees from veterans who are residents of the Home, said publication appearing in the Louisiana Register dated January 20, 1985. These same rules were republished in the March 20, 1987 edition of the Louisiana Register for the sole purpose of assigning section numbers. We find the following rules contained within LAC 4:VII.937-955 to be relevant and in effect during the time period at issue:
"§ 937. Admission Requirements
 * * *
 E. Every resident of the home shall be responsible for the payment of the full resident care and maintenance charge. The home administrator may consider waiver of payment of care and maintenance charges only for the amount of difference of income the veteran has and the total charge of care and maintenance.
 § 939. Care and Maintenance Fees
 Care and maintenance fees will be assessed on all family income. This includes income from all sources (Social Security, veterans administration pension, private pension, interest from savings accounts, income from any/all sources). In no case will the fee charged to the resident be more than the actual cost of care as determined by the director of the Louisiana Department of Veterans Affairs and the Veterans Affairs Commission.
 § 949. Fees Adjusted
 Care and maintenance fees will be adjusted when it has been established that there is a change in the veteran's income or family income if he has a dependent. The home reserves the right to request updated information from the resident, dependents, or any other source (signed authority at admission by veteran and/or next of kin). The home also reserves the right to establish retroactive charges effective to the date a change of income occurs.
 § 951. Additional Fees
 In addition to the regular care and maintenance fees collected, if less than the maximum monthly amount, and the resident has a savings account in excess of $500, if single, and $5,000 if married, the resident will be assessed an amount that would bring his care and maintenance fees up to the maximum allowable per month until his account is reduced to the above stated balance. This rule applies to residents' in-house accounts in excess of $2,500.
 § 953. Home Administrator Authority when Incorrect Income Given
 The home administrator, when given incorrect income information, will avail himself of all state laws to recoup all monies that should be made available to the home for care and maintenance fees, retroactive to the time that these monies became available for the resident's use while he/she was staying at the Louisiana War Veterans Home." (Emphasis added.)
As can be seen from the above, R.S. 29:383 not only authorizes, but directs the Department to adopt and promulgate rules and regulations which establish a fee or charge system. The systemshall take into consideration the income andestate of the veteran to insure that those veterans who are capable of paying for any or all of the use of the Home's facilities are assessed accordingly.
This intent is reflected throughout the Department's rules and regulations in LAC 4:VII. at Sections 937(E), 939, 949, 951 and 953, quoted supra. As previously noted, the rules provide for (1) care and maintenance fees assessed on income from all sources, including Social Security, V.A. pension compensation and savings accounts, and (2) retroactive adjustments to fees in the event there is a change in income and/or incorrect information is furnished to the Home's Administrator. In such cases, the Administrator is directed to recoup all monies that should have been made available, retroactive to the timethat these monies became available for use while the veteran was using any Home facilities.
Similar provisions are found in the federal counterpart to our State regulations. An excellent discussion of the historical development of 38 U.S.C.A. § 5505 and 5503(b)(1)(A) appears in Vet. Aff. Op. Gen. Couns. Prec. 24-95. Therein, the author quotes the applicable legislation and explains the legislative intent underlying its enactment:
 "3. Section 5503(b)(1)(A) provides in pertinent part as follows:
 `In any case in which a veteran having neither spouse nor child is being furnished hospital treatment or institutional or domiciliary care without charge or otherwise by the United States, or any political subdivision thereof, is rated by the Secretary . . . as being incompetent, and the veteran's estate . . . equals or exceeds $1,500, further payments of pension, compensation, or emergency officers' retirement pay shall not be made until the estate is reduced to $500.'
 * * *
 6. The legislative history of section 5503(b), as that provision has been amended by various statutes, indicates a consistent congressional purpose to prevent the accumulation of large estates derived from veterans' benefits which, upon an incompetent veteran's death, would pass to individuals who were not intended beneficiaries of Government funds.
 * * *
 9. A review of the legislative history of former section 5505 shows that, in enacting the statute, Congress took into consideration the reports by the General Accounting Office and the VA Inspector General which indicated that `large sums accumulated in the estates of non-hospitalized incompetent veterans comprised mainly of [VA] monetary benefits are in many cases being inherited by distant relatives of these veterans although little or no contact may have been maintained with the veteran.' . . . In Disabled American Veterans v. United States Department of Veterans Affairs, 962 F.2d 136, . . . the United States Court of Appeals for the 2nd Circuit reviewed the legislative history and purposes of the statute and concluded that the statute furthers the goals of reducing the Federal budget deficit, preventing remote and/or independent heirs of disabled veterans from inheriting VA-derived benefits, and limiting the incidence of abuse of veterans' estates by fiduciaries. Thus, a primary purpose of former section 5505 was to limit the estates of veterans with no spouse, child, or dependent parent so that large sums were not left in the estates to be inherited by distant relatives who may have had little or no contact with the veterans. This purpose is similar to that of section 5503(b). As with section 5503(b), requiring that the existence and relationship of a spouse, child, or dependent parent be established by evidence in order to avoid termination of benefits under former section 5505 is consistent with Congress' purpose in that it tends to assure that VA funds will not accumulate and pass to unintended beneficiaries."
Having set forth the facts in the case before us, an analysis of the state statutory and regulatory provisions relevant thereto and a discussion of the legislative history of the federal laws relating to the same subject matter, we focus now upon the contentions advanced by the Curator.
The Curator argues that the retroactive assessment of the maximum care and maintenance fee against the insurance annuity is unjustified and not supported by the rules and regulations governing the operation of the Home. He suggests that the insurance annuity fund is not income. Ergo, it should not be used as a factor in calculating the amount of expenses to be paid by the Veteran. Second, Section 949, which states that fees will be adjusted when a change in the Veteran's income is established, is inapplicable because the monies in the fund should not be considered income. Hence, there was no change in the Veteran's income. Finally, Section 951 authorizing an increase in fees contingent upon the presence of a savings account in excess of $500 is inapplicable because the annuity fund does not constitute a savings account. We respectfully disagree for the following reasons:
As previously noted, R.S. 29:383 mandates the department to adopt rules and regulations for setting fees, based on the Veteran's income and estate. In compliance therewith, the Department enacted Sections 939, 949, 951 and 953, all of which address fee assessments and the collection thereof. Section 939 broadly defines income to include Social Security and V.A. pension compensation benefits and other income from "any and all sources". Clearly, the income classifications listed in Section 939 are illustrative, not exclusive. Assuming, arguendo, the funds are not deemed to be income, they unequivocally form part of the Veteran's estate and, under R.S. 29:383, must be considered for fee assessment purposes.
While Sections 949 and 951, when read alone, are more supportive of Curator's position, they must be read in pari materia
with Section 953 which provides for retroactive assessments resulting from incorrect information. When the Veteran was admitted to the Home he was deemed incompetent, and had no spouse, children or dependent parents. He had accumulated income (i.e., Social Security and V.A. pension compensation benefits) in the amount of $82,000 which the Curator initially deposited in a savings account. As previously opined, these funds constitute income and/or the estate of the Veteran which was available and should have been included in the Home's calculations of the care and maintenance fee assessment.
Said funds were not included in the assessment because the Home was unaware of their existence due to their omission from the Veteran's financial statement prepared and submitted by the Curator along with the application for admission. Once apprised that it had been given incorrect income information, the Home immediately adjusted the Veteran's fee assessment to the maximum amount allowable and retroactively applied the assessment to March 1, 1986; i.e., the time at which these funds were available. The fact that the omitted account was converted to an annuity during the interim does not alter the fact that it was income available for the resident's/Curator's use at the time of admission.
In reaching this conclusion, we do not mean to imply that there was any intentional wrongdoing on the part of the Veteran and/or his legal representative and family members. To the contrary, upon notification of the retroactive fee adjustment, the Curator remitted payment in full, without dispute.
One could argue that the administrative rules and regulations governing the Home are, at best, ambiguous in their application to the funds in question. Assuming, arguendo, that the subject statutory and regulatory provisions are ambiguous, we must be guided by the doctrine of contemporaneousconstruction. Under this doctrine, when a statute and/or administrative regulation is ambiguous, a long-settled interpretation by those charged with administering the statute/regulation is given substantial and often decisive weight in its interpretation. Traigle v. PPG Industries, Inc.,332 So.2d 777 (La. 1976) and Danna v. Commissioner ofInsurance, 228 So.2d 708 (La.App. 1st Cir. 1969), Rehearing Denied.
In this regard, we have been advised by the current Executive Director of the Department that he and his predecessors have historically interpreted the above provisions to include the funds at issue in determining if the Veteran can pay for the use of the facilities.
Accordingly, it is the opinion of this office that the Home was within its legal authority to consider the Veteran's accumulated income of $82,000 comprised of Social Security and V.A. pension compensation benefits in arriving at the maximum $1,200 monthly care and maintenance fee. Further, the Home was correct in applying the fee assessment retroactively to the time when the funds were available for use by the Veteran/Curator.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
By: _____________________________________
 ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob III,/cla
Date Received:
Date Released: