Dear Mr. Caswell:
You have requested an opinion of the Attorney General in your capacity as General Counsel to the St. Landry Parish School Board (Board), relative to the issue of risk rating by the State Employees Group Benefits Program (Program). You state that prior to January 1, 2000, the Board was self insured for its medical insurance. Effective January 1, 2000, the Board elected to become enrolled in the Program's Health Indemnity Plan (Plan). Under the Plan, employees have the option of participating in an HMO or the State Program. You further state that far less than fifty percent of the Board's employees chose to participate in an HMO. Most employees opted to participate in the Plan. You specifically ask whether it is legally permissible for the Program to risk rate the employees of the Board who have chosen membership in the Plan.
We are of the opinion that R.S. 42:851(A)(5)(b)(iii) and 42:881
are relevant to the resolution of this issue. They provide, in pertinent part, the following:
 § 851. Authority for employee benefit programs; payroll deduction for payment of premiums
 A(1)(a) The state of Louisiana, through the Board of Trustees of the State Employees Group Benefits Program, and each of its governmental and administrative subdivisions are authorized to:
 (i) Procure private contracts of insurance covering their respective employees, officials, and department heads, or any class or classes thereof, and the dependents of such employees, officials, or department heads under a policy or policies of group, health, accident, accidental death and dismemberment, and hospital, surgical, or medical expense benefits; or
 (ii) Adopt, administer, or operate or contract for all or a portion of the administration, operation, or both of a self-funded program for that purpose.
 * * *
 (5)(b)(iii) If the school board elects to participate in the State Group Health and Accident Insurance Program after participation in another group health and accident program, the premium rate applicable to teachers and other school board employees and former employees intended to be covered by the program shall be the greater of the premium rate based on the loss experience of the group of the prior plan or the premium rate based on the loss experience of the classification into which the group is entering.
 § 881. Loss of eligibility for state agencies
 Notwithstanding any other provision of law to the contrary,if fifty percent or more of the employees of an entity which initially becomes a participant employer in the State Employees Group Benefits Program on or after July 1, 1993, elect to be members of a health maintenance organization licensed to transact business in this state, or on any successive July first following the initial enrollment of said entity, if more than fifty percent of the employees of said entity elect to participate in a health maintenance organization, the remaining employees of said entity participating in that health indemnity plan of the State Employees Group Benefits Program shall be charged a premium rate for that fiscal year based upon their collective claims experience during the previous fiscal year or that portion of the previous fiscal year during which they were members of the State Employees Group Benefits Program. This Section shall have no effect upon entities participating in the State Employees Group Benefits Program prior to July 1, 1993. (Emphasis added.)
Subsequent to the amendment to Section 851 authorizing the risk rating of School Boards, the Program adopted and promulgated a Rule limiting risk rating to the first year only. Between July 1, 1991 and October 1, 1992, four school boards entered the Program. Under Section 881 and the Rule, all four were risk rated for one year.
We find the following statutory and Civil Code provisions to be relevant to your inquiry:
 C.C. Art. 10. Language susceptible of different meanings
 When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
 C.C. Art. 12. Ambiguous words
 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
 R.S. 1:3. Words and phrases; how construed
 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
 The word "shall" is mandatory and the "may" is permissive.
At issue are two legislative enactment's on the risk rating of participants in the Program. Section 851, enacted in 1988, and the Rule promulgated by the Program implementing same, provide for risk rating of school boards for a period of one year. Section 881, enacted in 1992, provides for the risk rating of "an entity" only if fifty percent or more of its members elect coverage under an HMO. Section 881 does not define the term "entity", but it begins with the phrase, "Notwithstanding any other provision of law to the contrary ". This would suggest that the subsequent law was intended to embrace the whole legislation on the subject matter of risk rating.
The Program is taking the position that it can risk rate the Board's employees for one year pursuant to Section 851(5)(b)(iii) and its Rule. The Board is taking the position that, since less than fifty percent of its employees elected to be members of an HMO, Section 881 prohibits risk rating the remaining employees participating in the Plan. We have reviewed the statutes, in question, and find them to be ambiguous.
Our courts have clearly recognized that the paramount consideration in statutory interpretation is determining legislative intent. Conerly v. State, 714 So.2d 709 (La. 1988). Further, our jurisprudence has consistently recognized that contemporaneous history, including discussions attendant upon the progress of the legislation through its various stages, can be considered in order to discover the meaning and scope of the law itself. Tennessee Gas Transmission Co. v. Violet Trapping Co.,248 La. 49, 176 So.2d 425 (1965), rehearing denied; Roberts v.State Farm Mutual Auto Insurance Co., 662 So.2d 821 (La.App. 2nd Cir. 1995); Gremillion v. Lancaster, 244 So.2d 862 (La.App. 1st Cir. 1971); and Department of Social Services v. Parker,595 So.2d 815 (La.App. 2nd Cir. 1992).
Further, the doctrine of "contemporaneous construction" is recognized and applied in Louisiana. It dictates that when the meaning of a statute is in doubt, the interpretation of those charged with its enforcement will be given substantial weight.Danna v. Commissioner of Insurance, 228 So.2d 708 (La.App. 1st Cir. 1969) writ denied.
Based on these legislative and judicial principles of statutory interpretation, we believe a brief discussion of the bill histories, enactment and implementation of these two statutory provisions is relevant and helpful to the resolution of your inquiry.
Senate Bill No. 101 of the 1988 Regular Session of the Louisiana Legislature became Act 902 [Section 851(A)(5)(d)(iii)], effective September 9, 1988. The Bill was assigned to the House Committee on Appropriations, and was heard on June 14, 1988. We note the following excerpts of the Minutes of the Appropriations Committee:
* * *
 . . . He [Dr. McElveen, then Executive Director of the Program] stated that the bill is illogical in that if there is a separate rate for school boards coming into the plan then you will have school boards in adjoining parishes in the program having different rates for the same benefits . . .
 Representative Salter asked why the Board [i.e., Program] is opposed?
 Dr. McElveen stated that the board is opposed to the bill based on the fact that you have an illogical grouping of employees if you have a school board coming into the plan that may or may not have poor experience, you put them into the plan and then you are trying to define on some other basis a rate structure for that single board. You are going to be treating school boards in the plan with identical benefits on a different basis and charging different premiums for that same coverage. The fact that school boards come into the plan and then pull out has not been a problem at this date.
As can be gleaned from the above, the Program clearly opposed Senate Bill 101. The opposition stemmed from the inconsistency in the grouping of school boards and the corresponding rate structures.
Senate Bill No. 352 of the 1992 Regular Session of the Louisiana Legislature became Act 601 (Section 881) which required the risk rating of any entity entering the Program on or after July 1, 1993, if fifty percent or more of the employees elect to be members of an HMO. The risk rating will continue until more than fifty percent of the participant's employees elect to participate in the State Plan. The effective date of Act 601 is July 2, 1992.
Senate Bill No. 352, as originally introduced, prohibited
employees of an entity from participating in the Program if fifty percent or more of the employees of that entity became members of an HMO. The Bill was assigned to the Senate Committee on Insurance, and was heard on April 29, 1992. The Minutes of the Insurance Committee reflect that the Program's Executive Director supported this prohibitive language. The Bill was subsequently assigned to the House Committee on Appropriations, and was heard on June 2, 1992. We note the following excerpts of the Minutes of the Appropriations Committee which reflect the adoption of substantive amendments substituting risk rating of participating employees in place of the prohibition against membership:
 Senator Hollis indicated that there are amendments to Senate Bill No. 352. Jean Vandel explained that the amendments provide that in the event of 50% of employees joining a Health Maintenance Organization (HMO), the remainder of the employees will be considered and rated prior to their acceptance into the group benefits plan.
 Chairman Ackel offered the amendments to Senate Bill No. 352 and moved that they be adopted. There were no objections and the amendments were adopted by a vote of 13 yeas and 0 nays . . .
 Senator Hollis further explained that if the membership of the HMO is less than the 50% the remainder group will not be rated.
 Representative Long asked if the amendments being offered were prompted by the objections of the education group. Mr. Plaisance confirmed as much as possible while still protecting the current members of group benefits.
As can be gleaned from the above, the Program's Executive Director acknowledged that the amendments substituting risk rating for denial of membership were prompted by the "education group" or school board coalition. We focus now on the implementation of Act 601 by the Program.
A written report of the Program's Management Committee reflects the following action regarding the implementation of Act 601:
 The Management Committee met on September 16, 1992 and has the following report for the Board:
 * * *
 Review and recommendation of changes in rules concerning School Boards which join the State Employees Group Benefits Program after July 1, 1993 in accordance with Act 601.
 This act initially states that if the number of employees of an entity who elect to participate in a health maintenance organization exceeds the number of employees who elect to participate in the Program's indemnity plan, the latter will be risk-rated until fifty (50%) percent of the total number of employees is reached.
 After discussion, the Committee moved to recommend that the Board modify the current rule of one year risk-rated and allow those entities requesting enrollment into the Program prior to July 1, 1993 to be risk-rated until June 30, 1993, and after July 1, 1993 be allowed to pay the same premiums as all other entities. (Emphasis added.)
Minutes of the October 8, 1992 meeting of the Program's Board of Directors reflect the following action taken on the Management Committee's recommendation:
 Mrs. White read the report from the Committee on increasing the length of time allowed for risk-rating entities requesting enrollment into the Program. Mr. Plaisance reemphasized the issue and strongly recommended approval of this new rule. Senator Hollis made a motion to modify the current rule requiring that entities be risk-rated for one year and to allow those entities requesting enrollment prior to July, 1993 to be risk-rated only until June 30, 1993.
(After July 1, 1993, entities which are members of the Program prior to June 30, 1993, will not continue to be risk rated. Effective July 1, 1993, all new entities which do not have greater than 50% participation in the indemnity program will be risk rated upon entry and will remain risk rated until there is greater than 50% participation in the indemnity Program in accordance with Act 601.) The motion was seconded by Mrs. White, and the following is the result of a roll call vote:
 * * *
 With seven (7) yeas and (0) nays, the motion carried. (Emphasis added.)
Subsequently, the Program initiated a formal process of promulgating this Rule by publishing a "Notice of Intent" in the November issue of the 1992 Louisiana Register. This marks the last activity taken in connection with the enactment of the Rule. While the Rule was never formally enacted, it is noted that on October 1, 1993, the Program accepted the enrollment of the East Feliciana Parish School Board. The Program did not risk rate the school board because more than half of its employees enrolled in the State Plan. In other words, less than fifty percent of the employees enrolled in an HMO.
We have reviewed the Minutes of the meeting of the legislative committees that heard Senate Bills 102 and 352, the Program's Management Committee report recommending the abolishment of the one year Rule for risk rating school boards, the Program's Board of Directors' approval of the fifty percent rule in place of the one year rule and the Program's subsequent granting of membership to the East Feliciana Parish School Board with no risk rating. Based on our review, we believe a more than reasonable inference can be drawn that the legislative intent in enacting Section 881 was to consolidate participating and future entities, including school boards, for purposes of risk rating. In other words, Section 881 eliminated the one year risk rating previously applied to school boards by Section 851, and substituted the continuous risk rating for all entities until more than fifty percent of a participant's employees participate in the State Plan.
It would appear from its actions that the administrators of the Program likewise believed Section 881 consolidated the risk rating of all entities, including school boards. While a formal Rule was never promulgated by the Program, it is undisputed that the East Feliciana Parish School Board was accepted into the Program without risk rating. Substantial weight must be given to this administrative and/or contemporaneous construction. Danna v.Commissioner of Insurance, cited supra.
Accordingly, it is the opinion of this office that R.S. 42:881 is controlling on the issue of whether or not the St. Landry Parish School Board can be risk rated by the Board of Trustees of the State Employees Group Benefits Program. Thus, as of January 1, 2000, the date upon which the Board became a participant in the Program, if more than fifty percent of its employees elected membership in the HMO, the Program can legally risk rate the remaining employees participating in the State Plan. Conversely, if more than fifty percent of its employees elect to become members of the State Plan, those participating employees can not be risk rated.
As previously noted, a vast majority of the employees have opted to participate in the State Plan. Hence, they should not be risk rated. In accord is Attorney General Opinion No. 00-22.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/dra
Mr. A. Gerard Caswell Attorney at Law 142 N. Second Street P.O. Box 1600 Eunice, LA 70535
DATE RECEIVED: DATE RELEASED:
Robert E. Harroun, III Assistant Attorney General